## THORWALD E. THORESEN v. JULIUS SCHMAHL.
## MARGARET MUNROE v. SAME.[1]

August 16, 1946.

Nos. 34,201, 34,202.

[1]Reported in 24 N. W. (2d) 273.

*G. W. Mantor,* for relators.

*J. A. A. Burnquist,* Attorney General, and *Victor H. Gran,* Assistant Attorney General, for respondent.

CHRISTIANSON, JUSTICE.

Certiorari to review decisions of the industrial commission denying relators additional compensation from the special compensation fund.

Relator Thorwald E. Thoresen, on June 11, 1928, in the course of his employment as an employe of Willis K. Jacobs, doing business as the Minnesota Tent & Awning Company, suffered bodily injuries arising out of his employment from which he has never recovered. After hearing before a referee on December 14, 1933, his disability was adjudged total and permanent, and resumption of compensation payments up to the maximum of $10,000 was ordered. Total permanent disability has continued without interruption since the time of injury.

At the time of Thoresen's injury, his employer, who later failed, carried workmen's compensation insurance with the Constitution Indemnity Company. While making payments to the employe pursuant to the award, the insurance carrier failed. Thereupon, Lloyds Insurance Company of America succeeded to the affairs and obligations of the defunct insurer and continued payments pursuant to the award until April 16, 1933, on which date Lloyds also failed and went into the hands of the liquidation bureau of the state insurance department of New York. This bureau still retains jurisdiction of the liquidation. During the liquidation of Lloyds, compensation payments amounting to $598.11 have been paid the employe. It is admitted that liquidation is practically completed and that the most that can be expected in the way of future payments is a possible payment of $90.28.

Because of the insolvency of the insurance carrier and the failure of the employer, it is agreed that, of the total award of $10,000 made to the employe, only $4,673.92 has been paid to him, and that

there is no possibility whatsoever that the balance of the award will ever be paid.

All of the foregoing facts were stipulated between the parties in proceedings had before a referee in the matter. It was also stipulated that "said employee was receiving compensation on account of his said permanent total disability on the 23d day of April, 1941, such date being the effective date of the amendment to Minnesota Statutes 176.13 (Mason Statutes, Minnesota 4276)."

On June 5, 1945, the employe filed a petition with the industrial commission directed to the custodian of the special compensation fund, praying for an allowance of benefits as provided therein. The matter was heard before a referee, who made findings in conformity with the stipulation of facts and awarded compensation to the employe from the special compensation fund of $12.50 per week from May 10, 1944, subject to the limitations of the compensation act. The custodian of the special compensation fund appealed from the findings of the referee to the industrial commission, which affirmed all the findings of the referee, but vacated and set aside his determination and disallowed the award made by him.

In the case of Margaret Munroe, widow of Roy Munroe, we have the same employer as in the Thoresen case and the same insurance carriers. Munroe was injured August 7, 1928, about two months later than Thoresen. His injuries also resulted in total disability, which became permanent on or about October 3, 1933, and such permanent total disability continued up to the time of Munroe's death on April 11, 1945. It is agreed that of the $10,000 award made to Munroe on November 10, 1933, only $5,498.66 has been paid and that there is no possibility whatever that the balance will ever be paid. As in the Thoresen case, this is of course due to the failure of the insurance carrier and the employer. In the Munroe case the foregoing facts were stipulated. It was further stipulated:

"* * * That said Roy Munroe was receiving compensation on and subsequent to the 23d day of April, 1941, being the effective date of the amendment to Section 176.13 General Laws Minnesota (Section 4276 as amended Mason's Minnesota Statutes)."

On March 10, 1945, Munroe executed a petition against the custodian of the special compensation fund, but before filing it he died on April 11, 1945. Thereupon, Margaret Munroe, his widow and sole dependent, filed her petition, claiming compensation from the special compensation fund and praying that she be substituted as petitioner in place of her deceased husband. It was subsequently stipulated by the parties before the referee that she be so substituted as petitioner. In view of the fact that this and the Thoresen case presented identical questions for decision, they were consolidated for hearing by the referee and later on appeal to the commission. In the Munroe case, the referee made findings in conformity with the stipulation of facts and awarded compensation at the rate of $15 per week to petitioner, Margaret Munroe, from the special compensation fund from May 10, 1944, the date of the last compensation payment by the liquidation bureau, to April 11, 1945, the date of Munroe's death. On appeal to the commission, however, as in the Thoresen case, the findings of the referee were adopted by the commission, but the determination of the referee was vacated and his award of compensation disallowed.

Relators seek a review of the decisions of the commission, claiming that they are not in conformity with the terms of the compensation act and are unwarranted by the evidence. Since both cases involve the same question, they have been consolidated for presentation here and will be covered by one opinion.

The question for decision is whether, under the foregoing facts, relators are entitled to the benefits claimed by them from the special compensation fund.

The portion pertinent to decision here of Minn. St. 1941, § 176.13 (Mason St. 1941 Supp. § 4276), following its amendment by L. 1941, c. 384, effective April 23, 1941, is as follows:

"* * * All employees who are now receiving, or who may hereafter become entitled to receive, compensation for permanent total disability, whether from the employer or from the special fund, after receiving the full amount of $10,000 for such disability, shall be paid from the fund an additional sum of not to exceed $2,500,

in the same manner and with the same limitations, except as to amounts, at the rate of one-half of the wages they were receiving at the time of the injury which rendered them permanently totally disabled, subject to a maximum of $15.00 per week and a minimum of $8.00 per week, but the full amount of their wages if at the time of such injury they were receiving less than $8.00 per week."

It is to be noted that this statute provides that, to be entitled to the benefits of the special compensation fund, the injured employe must have been receiving compensation for permanent total disability on the effective date of the act, namely, April 23, 1941, or must thereafter have become eligible to receive such compensation, and he must first have received "the full amount of $10,000 for such disability."

Have the foregoing requirements been satisfied by relators so as to entitle them to the benefits they claim from the special compensation fund? We believe that they have.

 In view of the fact that the commission, by adopting the findings of the referee, found as a fact in each case that the injured employe was "receiving compensation" at the time of the effective date of the amendment to the statute here involved, it might seem unnecessary to consider whether there has been a compliance with the requirement of the statute that the injured employes, to be entitled to additional compensation from the special compensation fund, must have been receiving compensation at the time of the effective date of the amendment to the statute or may thereafter have become entitled to receive compensation. However, as respondent apparently takes the position that the compensation referred to in the findings of the commission as having been received was not compensation within the meaning of the statute involved, and inasmuch as the commission, despite its specific findings of fact that the employes on the date in question were receiving compensation, indicates in its opinion in connection with its order in the Thoresen case that it does not consider the payments made by the liquidator of the insurance carrier to be

within the foregoing requirement of the statute, we must consider this phase of the cases.

In considering the statute here involved, we should at the outset remind ourselves that this court has repeatedly and emphatically enunciated the proposition that the workmen's compensation act is remedial and must be liberally construed. Illustrative of such cases are the following: Nyberg v. Little Falls Black Granite Co. 192 Minn. 404, 405, 256 N. W. 732, 733, where the court said:

"This court has held that the compensation act should receive a broad and liberal construction in the interest of workmen to carry out its policies."

Also, in Nelson v. Creamery Package Mfg. Co. 215 Minn. 25, 32, 9 N. W. (2d) 320, 324:

"Our conclusion is strengthened by the oft-repeated rule expressed in Moore v. J. A. McNulty Co. 171 Minn. 75, 213 N. W. 546, that the workmen's compensation act is *highly remedial* and should not be construed so as to exclude an employe from the benefits thereof unless it clearly appears that he does not come within the protection of the act." (Italics supplied.)

Respondent contends that the payments made by the liquidator of the insurance carrier to the injured employes at the time of the amendment to the statute in question did not constitute compensation within the requirements of the statute. This contention, we believe, is untenable. His position in this respect clearly ignores the admonition of this court in the Nelson case, *supra,* when it states that "the workmen's compensation act is highly remedial and should not be construed so as to exclude an employe from the benefits thereof unless it clearly appears that he does not come within the protection of the act." It should not be lost sight of that the payments made by the liquidator of the insurance carrier to the injured employes were made on account of compensation due them under awards made to them under the compensation act. These payments were made in partial satisfaction of compensation due the employes under the compensation awards. To construe

these payments as not being compensation payments because they come from the liquidator of the insurance carrier responsible for their payment is giving to the provision of the compensation statute here involved a decidedly narrow construction rather than the broad and liberal one so repeatedly urged by this court.

In keeping with the proposition repeatedly enunciated by this court that the workmen's compensation act must be given such a reasonable, liberal, and practical construction as will effectuate the intent and purpose of the act, we must and do hold that the payments made by the liquidator herein constitute compensation within the meaning of the act here under consideration and constitute a full compliance with the requirement that the injured employes, to be eligible to additional compensation under the special compensation fund, must have been receiving compensation on the effective date of the amendment to the act.

▪ The provision of the statute in question which we must next consider is the requirement that before an injured employe is eligible to receive additional compensation from the special compensation fund he must first have received "the full amount of $10,000 for such disability."

Because of the insolvency of the insurance carriers and the failure of the employer, it has become impossible to pay the employes "the full amount of $10,000." The failure of the insurance carriers and the employer to pay the awards in full, is of course no fault of the employes. Under such circumstances, should a literal compliance with the statute be required with respect to the provision that, to be eligible to the benefits of the special compensation fund, the injured employe must first have received "the full amount of $10,000 for such disability"? We answer such question in the negative.

Obviously, the special compensation fund was created to alleviate the financial hardship of those totally and permanently incapacitated workmen whose compensation payments have run out. Prior to the creation of this fund, no provision had been made by law for helping these unfortunate individuals. In the instant cases, their

dependency was aggravated by the fact that the award of $10,000 was, in effect, in each case reduced to a considerable extent by the insolvency and failure of the insurance carriers and the employer—the ones liable for the payment of the awards. The total amount of each award was long past due before proceedings were commenced to make available to the employes the benefits of the special compensation fund. The provision in the statute that the injured employe must first have received "the full amount of $10,000 for such disability" before being entitled to share in the special compensation fund was obviously intended to mean that such employe must first exhaust all the benefits to which he was entitled under the maximum award (which happens to be the sum of $10,000) before making demands on the special fund. In the instant cases, because of the unfortunate failure of the insurance companies and the employer, the employes have exhausted all the available benefits under the maximum awards made to them. The $10,000 award in each case has been exhausted, although not all paid to the employes. They have received all they can receive from such awards. Such maximum awards were exhausted and all past due before they petitioned for benefits from the special compensation fund. That is all that the statute contemplates. A contrary construction of it would result in an absurdity—a tragic incongruity. As stated by Mr. Justice Field in United States v. Kirby, 74 U. S. (7 Wall.) 482, 486, 19 L. ed. 278:

"* * * All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd consequence. It will always, therefore, be presumed that the legislature intended exceptions to its language, which would avoid results of this character. *The reason of the law in such cases should prevail over its letter."* (Italics supplied.)

And in 50 Am. Jur., Statutes, § 393, it is stated:

"* * * Indeed, it is an old and unshaken rule in the construction of statutes that the intention of a remedial statute will al-

312

ways prevail over the literal sense of its terms, and therefore when the expression is special or particular, but the reason is general, the expression should be deemed general."

We accordingly hold that in these cases the provision of the statute which provides that before being entitled to additional compensation from the special compensation fund the injured workman must have received the "full amount of $10,000 for such disability" has been satisfied.

Both cases are remanded with directions to award compensation to relators from the special compensation fund pursuant to the applicable statute.

An attorney's fee in the sum of $250 (for the combined proceedings herein) is allowed relators.

[1]Reported in 24 N. W. (2d) 244.