HANNAH SKJEFSTAD v. RED WING POTTERIES, INC., AND OTHERS.
STATE TREASURER, CUSTODIAN OF SPECIAL COMPENSATION FUND, RESPONDENT.[1]

July 17, 1953.

No. 36,041.

[1]Reported in 60 N. W. (2d) 1.

*Elmer J. Tomfohr* and *Holst, Erickson, Vogel & Richardson,* for relator.

*J. A. A. Burnquist,* Attorney General, *Victor H. Gran,* Assistant Attorney General, for respondent.

FRANK T. GALLAGHER, JUSTICE.

Certiorari from a decision of the industrial commission disallowing petitioner's claim for additional compensation from the special compensation fund.

The material facts in this case are substantially as follows: On February 8, 1950, Karsten Skjefstad petitioned for benefits under the workmen's compensation act. The matter came on for hearing before a referee on May 11, 1950, and was continued for further testimony. On May 16, 1950, before any further proceedings had taken place, Karsten Skjefstad died.

Following his death, Hannah Skjefstad, widow of deceased, and Barbara Louise Skjefstad, minor daughter, were substituted as petitioners in the matter. On August 4, 1950, a stipulation was entered into between decedent's employer and its insurer and petitioners whereby it was agreed that petitioners were the sole surviving dependents of decedent within the meaning of the workmen's compensation act. It was further agreed that as a result of his employment decedent contracted the occupational disease of silicosis; that as a result of such disease he became disabled on July 17, 1948; that he remained so disabled due to such disease until his death on May 16, 1950, a period of 95 1/3 weeks; that autopsies performed at the request of petitioners and insurer revealed that decedent was afflicted with widespread silicosis, a hypertension condition, and a recent brain hemorrhage; and that death was caused by

silicosis and the cerebral hemorrhage. The stipulation set forth that the sole dispute between the parties was the percentage of liability of the employer and insurer under M. S. A. 176.661 and that in order to compromise such dispute it was agreed that the insurer's liability was 50 percent. The stipulation also provided that it was the intention of the parties that nothing therein should jeopardize any rights which petitioners might have for further benefits from the special fund under § 176.13. It was then agreed in the stipulation that the insurer pay petitioners the sum of $5,000 in the manner set forth in the stipulation.

On August 17, 1950, the commission made its award based on the stipulation, stating in part:

"* * * that Hannah Skjefstad, widow, and Barbara Louise Skjefstad, minor dependent daughter of the above named deceased employe, are entitled to and they are hereby awarded against the above named employer and insurer compensation in the sum of $5,000.00 covering 95-1/3 weeks of temporary total disability at the rate of $27.00 per week, and approximately 97 weeks of dependency compensation at the rate of $25.00 per week," payable in the manner set forth in the award.

On April 1, 1952, the above-named widow, for herself and dependent child, petitioned the industrial commission for an award from the special fund, setting forth among other things that she had received the full amount awarded. On July 17, 1952, the referee made findings and determination denying the petition. In a memorandum attached, the referee took the position that the dependents' benefits were defined by the law in effect at the date of the last payment to them of compensation benefits by the employer and insurer. The last payment at the rate of $25 per week for dependency compensation under the award was made in 1952 prior to the filing of the petition for an award against the special fund. Between the date of decedent's death on May 16, 1950, and the completion of the last payment for dependency compensation in 1952, the legislature passed L. 1951, c. 670 (M. S. A. 176.133), approved April 21, 1951.

■ The preliminary question presented here is whether § 176.13 or § 176.133 governs.

It is the law in this state that the law in effect at the time of the employee's death controls. Pittman v. Pillsbury Flour Mills, Inc. 234 Minn. 517, 48 N. W. (2d) 735; Warner v. Zaiser, 184 Minn. 598, 239 N. W. 761.

In Warner v. Zaiser, 184 Minn. 598, 601, 239 N. W. 761, 762, this court said:

"* * * The obligations and rights of the parties as to weekly compensation and other benefits to the employe do become fixed at the date of a compensable accident; as to benefits and liabilities arising because of the employe's death, they become fixed at the time of the death. The legislature may change the scale of weekly or other benefits prior to the occurrence of the accident; it may change the benefits to be received by the widow of an employe prior to the death. The rate of compensation, whether for injury or death, may not be changed after the event takes place that fixes the rights of the parties under the law in force at that particular time."

We therefore conclude that § 176.133 does not govern here.

■ We then come to the next pertinent question; that is, whether under § 176.13(c) petitioner is entitled to additional compensation from the special fund. Section 176.13(c) provided that, *after the maximum collectible compensation had been paid* and satisfactory proof thereof had been filed, a widow with a dependent child (as in the instant case) receiving compensation under § 176.12 for the death of her husband shall receive additional compensation, not exceeding $2,500, from the special fund. There is some dispute between the parties as to the maximum under § 176.664, as amended by L. 1949, c. 500, but under any view of our compensation act, the maximum death benefits which could have been awarded employee's dependents at the time of his death was $10,000. L. 1949, c. 540, § 4, increased the maximum death benefits which could be awarded dependents to $10,000.

In the instant case, however, petitioner did not receive $10,000 but received only the $5,000 agreed upon in the stipulation and awarded by the commission. Petitioner argues that, even so, she is entitled to the additional compensation from the special fund inasmuch as she complied with the requirements of the statute and was receiving compensation under § 176.12 for the death of the employee until sometime in 1952. She contends that the $5,000, the total amount of the award in this particular case, was *the maximum collectible compensation*. She argues that she was represented by an attorney employed by the industrial commission at the time the stipulation was entered into and that the award of $5,000 was made by the industrial commission. She therefore assumes that the maximum collectible compensation was awarded when the $5,000 award was made by the commission, otherwise, she contends, the commission would not have made the award for that amount. She further argues that the mere fact that there was a stipulation for a $5,000 settlement did not mean that the maximum collectible compensation had not been paid. She calls attention to the provision in the stipulation expressly reserving the right to petition for additional compensation against the special fund.

Petitioner cites Thoresen v. Schmahl, 222 Minn. 304, 24 N. W. (2d) 273, as controlling. While it is true that that case repeated the often-stated principle that the workmen's compensation act is remedial and must be liberally construed, we do not otherwise consider it controlling under the facts and circumstances here. It was held in that case in effect that the requirement that an employee must first have received the maximum award of $10,000 before becoming eligible to receive additional compensation from the special fund was satisfied even though the injured employee had not received all of the award where payment of such award was made impossible by insolvency of the insurance carrier and failure of the employer, which appeared to be the situation there. Such was not the situation in the case at bar.

While petitioner's argument is ingenious and not without merit, we are compelled to the conclusion that under the facts here peti-

tioner is not entitled to additional compensation from the special fund. Here, a dispute existed between the parties as to the percentage of liability of the employer and insurer under § 176.661. The insurer contended that its liability was less than 50 percent; while petitioner maintained that it was greater than 50 percent. They compromised this dispute on the basis of $5,000, which was 50 percent of the death benefit which could have been awarded to the employee's beneficiary at that time. It is evident that, after this amount was agreed upon by the parties, the commission merely followed the general terms of the stipulation in making its award. As we see it, the issue then becomes one of whether or not the maximum collectible compensation had been paid to petitioner. She contends that this phrase must be construed to mean the maximum which under the facts of a particular case is collectible as compensation. With this we cannot agree. Rather, it appears to us that what the legislature intended under § 176.13(c) was that a widow with a dependent child or children who was receiving or who might thereafter become entitled to receive compensation under § 176.12 for the death of the husband and father should receive from the special fund, as additional compensation, not exceeding $2,500 *after the maximum collectible compensation had been paid.* It cannot be disputed here that at the time of the death of the employee the maximum collectible compensation was $10,000. Petitioner in this case never received $10,000 but elected to stipulate a disputed claim in the amount of $5,000. It seems clear to us that what the legislature intended under § 176.13(c) was that no qualified beneficiary receiving compensation under § 176.12 was entitled to receive additional compensation from the special fund until the $10,000 maximum collectible compensation had been paid and satisfactory proof thereof had been filed. Under the circumstances here, we cannot assume a legislative intent in plain contradiction of the words used. Loew v. Hagerle Brothers, 222 Minn. 258, 24 N. W. (2d) 278.

Affirmed.