STATE of Minnesota, Respondent,

v.

Donn Harvey BEHL, II, petitioner,
Appellant.

No. CX–96–84.

Supreme Court of Minnesota.

May 29, 1997.

Thomas E. Gorman, Gorman & Gorman, Red Wing, for appellant.

Gary Fridell, Goodhue County Atty., Red Wing, for respondent.

## OPINION

TOMLJANOVICH, Justice.

The state on January 25, 1995 charged by delinquency petition Donn Harvey Behl, II, a minor born November 30, 1978, with five criminal counts including first-degree murder. Four days later, the state automatically certified Behl as an adult under Minnesota Statutes section 260.015, subdivision 5(b) by filing an adult criminal complaint containing those same five counts, and thus terminated all proceedings in juvenile court arising out of the same behavioral incident. *See* Minn. R. Juv. P. 18.08, subd. 1. Approximately two weeks later, a grand jury indicted Behl on six criminal counts, including first-degree murder. After a week-long trial, a jury acquitted

Behl of first-degree murder, first-degree felony murder, second-degree murder, aggravated robbery and second-degree felony murder. The jury convicted Behl of possession or operation of a short-barrelled shotgun, theft of a motor vehicle and manslaughter in the second degree.

Behl moved the district court to return the case to the juvenile court for sentencing, but the court denied the motion and sentenced Behl to 12 months and 1 day for the shotgun conviction and a concurrent sentence of 72 months for the manslaughter conviction.[1] The court of appeals affirmed the denial of the motion and the sentencing order. *State v. Behl,* 547 N.W.2d 382 (Minn.App.1996). We also affirm the denial of the motion to return the defendant to juvenile court for sentencing, but we reverse that portion of the sentencing order based upon the shotgun conviction and remand the case to the district court for redetermination of the sentence in accordance with our ruling.

Although much of the testimony at trial was in conflict, the jury concluded that the following events occurred. Behl, who was 16 years old at the time, sawed off the barrel and stock of his father's 12–gauge shotgun and on January 20, 1995 took the gun to the home of his friend, Ryan Postier. Three days later, Behl and Postier skipped school and went to Postier's home in Pine Island, Minnesota. Ryan Postier's brother, Brad Postier, died at the home later that day after receiving a shotgun wound to the head from Behl's shotgun.

Behl and Ryan Postier were the only witnesses to the shooting. Behl and Ryan Postier then fled the scene in Brad Postier's truck. With Behl driving, the vehicle skidded out of control and ended up in a ditch. The two boys walked away from the crash and discarded certain items, including the shotgun, along the way. A Goodhue County sheriff's deputy picked up the boys later that day at approximately 3 p.m. He transported the boys to Pine Island and eventually re-

---

1. The court based the manslaughter sentence on a 25 percent upward departure and one criminal history point for the shotgun conviction. The court found that the theft of the motor vehicle was part of the same behavioral incident as the manslaughter conviction and consequently did not impose a sentence for that conviction as per Minn.Stat. § 609.035 (1996). Behl appealed only the assessment of the criminal history point.

leased them. The boys separated, each returning to his own home. After arriving home, Ryan Postier called 911 and informed the dispatcher that he found his brother in his bedroom, apparently dead. Later that evening, investigators arrived at Behl's home. A short time later, Behl confessed to shooting Brad Postier.

The Goodhue County Attorney filed a delinquency petition on January 25, 1995 that included a charge of first-degree murder. Once the county attorney realized that the matter fell within the exclusionary provisions of Minnesota Statutes section 260.015, subdivision 5(b) and section 260.111, a criminal complaint was filed on January 29, 1995, and the delinquency petition was dismissed. On February 9, 1995, a Goodhue County grand jury indicted Behl on six criminal counts, including first-degree murder.

At trial, Behl said he had not been in Brad Postier's bedroom on the day of the shooting and that it was Ryan Postier who shot his brother. Behl admitted to preparing the short-barrelled shotgun and bringing it to the Postier's home, as well as to participating in the theft of Brad Postier's truck, but he said he confessed to the shooting only because Ryan Postier threatened him. The jury found Behl not guilty of first-degree murder, but guilty of manslaughter in the second degree in violation of Minnesota Statutes section 609.205, possession or operation of a short-barrelled shotgun in violation of section 609.67, subdivision 2, and theft of a motor vehicle in violation of section 609.52, subdivision 2(17).

Sentencing was scheduled for November 17, 1995. The presentence investigation report recommended the presumptive sentence for each offense. Those presumptive sentences were 12 months and 1 day for the shotgun conviction, 58 months (based on one criminal history point for the shotgun conviction) for the manslaughter conviction, and 15 months (based on two criminal history points) for the motor vehicle theft conviction. Behl moved the court to return the case to the jurisdiction of the juvenile court for sentencing and a downward departure. The district court on November 20, 1995 denied both motions and proceeded to sentence Behl. The court found that Behl's possession of a short-barrelled shotgun was not part of a single course of conduct and therefore sentenced Behl to 12 months and 1 day for the shotgun conviction. The court sentenced Behl to 72 months for the manslaughter conviction, a 25 percent upward departure from 58 months—the presumptive sentence based on one criminal history point for the shotgun conviction. The court ordered the two sentences to be served concurrently. The court also found that the motor vehicle theft was part of the same behavioral incident as the manslaughter and therefore imposed no sentence for that conviction.

Behl now raises two distinct issues: Whether the district court had jurisdiction to sentence the juvenile appellant for his convictions, and if it did, whether the sentences were appropriate.

## I.

■ A statute provided the basis for the district court's jurisdiction over the juvenile. Consequently, the issue of the district court's jurisdiction is a question of law that is fully reviewable by this court. *See Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985) (stating that the construction of a statute is a question of law).

The legislature has conferred original and exclusive jurisdiction upon the juvenile court in proceedings concerning any "child" who is alleged to be delinquent. Minn.Stat. § 260.111, subd. 1 (1996). In 1994, however, the legislature withdrew the juvenile court's jurisdiction "over proceedings concerning a child excluded from the definition of delinquent child under section 260.015, subdivision 5, paragraph (b)." Minn.Stat. § 260.111, subd. 1a. Section 260.015, subdivision 5, paragraph (b) excludes from the definition of "delinquent child" any "child alleged to have committed murder in the first degree after becoming 16 years of age * * *." Under this statute—commonly referred to as automatic waiver, automatic certification or legislative waiver—"juvenile court jurisdiction terminates all proceedings arising out of the same behavioral incident." Minn. R. Juv. P. 18.08, subd. 1. Because Behl had turned 16 years of

age at the time he allegedly committed the acts that led to his indictment for first-degree murder,[2] the district court had original and exclusive jurisdiction over that portion of the case "arising out of the same behavioral incident" that led to the indictment for first-degree murder.

Although Behl does not dispute the district court's original jurisdiction over all allegations related to the "same behavioral incident" leading to his first-degree murder indictment, he contends that once the jury found him not guilty of the only allegation upon which the district court's jurisdiction was based, the district court no longer could sentence him as an adult without first granting him a hearing similar to those used to certify a "delinquent child" for district court. *See* Minn.Stat. § 260.125 (1996) (establishing system for certification of juvenile to district court).

Behl concedes that the legislature in passing section 260.015 did not specifically address the disposition of a juvenile acquitted of first-degree murder (the enumerated charge), but convicted of a lesser offense (non-enumerated charge). He argues, however, that the legislature never intended for automatic certification to result in automatic district court sentencing for juveniles acquitted of first-degree murder. And if this court concludes that the legislature did intend such a result, he argues that the automatic imposition of adult sentences for crimes other than those enumerated in the automatic-certification statute violates his procedural due process, substantive due process and equal protection rights. Before embarking on a constitutional analysis of Minn.Stat. § 260.015, therefore, we must determine whether the statute provides the district court with jurisdiction to sentence juveniles convicted exclusively of a crime, or crimes, other than those enumerated for automatic certification.

## A. Statutory interpretation

█ It is undisputed that the legislature did not provide a mechanism to return to juvenile court those cases upon which district court jurisdiction has attached. *But see* Comment to Minn. R. Juv. P. 18.08 ("If [the first-degree murder] accusation is first made by complaint, and is followed by an indictment that does not accuse the child of first[-]degree murder but of some other crime, the proceedings come within the exclusive jurisdiction of the juvenile court * * *."). It also is undisputed that the automatic-certification statute is silent on the issue of disposition following a conviction for a crime other than first-degree murder. We must, therefore, start our analysis by considering the significance of this silence.

Behl characterizes as inadvertent, and therefore ambiguous, the legislature's failure to provide either a transferring mechanism or explicit authority to sentence as juveniles those defendants who have been acquitted of the only offense for which they were certified to district court. As a result, Behl essentially asks us to effectuate the legislature's hidden intent to provide the district court with the authority to sentence such offenders as juveniles. The state, on the other hand, classifies the legislature's silence as intentional, and therefore unambiguous. It contends that the automatic-certification provisions are clear in granting the district court exclusive jurisdiction over all charges arising out of the same behavioral incident as the charge upon which the juvenile was certified. Consequently, the state asks that we refuse to give the district court a power not expressly provided in the statute. *See* Minn. Stat. § 645.16 (1996) ("[T]he letter of the law shall not be disregarded under the pretext of pursuing the spirit.").

The constitution vests the judicial power of the state in "a district court and such other courts * * * as the legislature may establish." Minn. Const. art. VI, § 1. Any person specifically excluded from "such other

2. Behl was born on November 30, 1978. He, therefore, turned 16 on November 30, 1994. The alleged acts took place on January 23, 1995. He was charged by criminal complaint on January 26, 1995. *See State v. Fleming*, 302 Minn. 61, 223 N.W.2d 397, 400 (1974) (stating that essential question in determining which court has jurisdiction is age of individual when alleged violation took place).

courts," therefore, is under the jurisdiction of the district court. Section 260.111 clearly states that "the juvenile court lacks jurisdiction over proceedings concerning a child excluded from the definition of delinquent child under section 260.015, subdivision 5, paragraph (b)." As was stated above, section 260.015, subdivision 5, paragraph (b) explicitly excludes any "child *alleged* to have committed murder in the first degree after becoming 16 years of age * * *." (Emphasis added). Section 260.111, meanwhile, grants the district court "original and exclusive jurisdiction in criminal proceedings concerning a child excluded from the definition of delinquent child under section 260.015, subdivision 5, paragraph (b)."

Other courts asked to interpret similar statutes have concluded that adult-court jurisdiction based upon the automatic certification of a juvenile charged or indicted for an enumerated offense necessarily reaches non-enumerated offenses arising from the same behavioral incident. *See Tolbert v. State,* 598 So.2d 1011 (Ala.Crim.App.1991); *Partlow v. United States,* 673 A.2d 642, 645 (D.C.1996); *Worthy v. State,* 253 Ga. 661, 324 S.E.2d 431 (1985); *People v. Veling,* 443 Mich. 23, 504 N.W.2d 456 (1993); *Carter v. State,* 334 So.2d 376 (Miss.1976). Such holdings typically are based upon double-jeopardy concerns.

> [D]ouble jeopardy considerations arguably would prohibit the prosecutor from trying the defendant as an adult in circuit court for the enumerated offense and also trying him as a juvenile in probate court for the non[-]enumerated offenses. As a result, if he cannot obtain a waiver [or certification] for the non[-]enumerated offenses, the prosecutor must choose between trying him for the enumerated offense or for the non[-]enumerated offenses. Again, simple logic suggests that the Legislature did not intend to create an anomaly between the automatic waiver statute and the constitutional prohibition against double jeopardy.

*Veling,* 504 N.W.2d at 463 (footnote omitted); *see also* Minn.Stat. § 609.035, subd. 1 (1996)

("[I]f a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses and a conviction or acquittal of any one of them is a bar to prosecution for any other of them.").

Behl argues, however, that the purpose of section 260.015 requires a district court, upon a conviction for any crime other than first-degree murder, to either return the defendant to juvenile court for disposition or, in the alternative, give the defendant a hearing to determine whether the defendant should be sentenced as an adult or adjudicated as a juvenile. For support, Behl points to a similar statute in Oregon, whereby:

> the trial court shall not sentence the defendant therein, but * * * shall order a presentence report to be made in the case, shall set forth in a memorandum such observations as the court may make regarding the case and shall then return the case to the juvenile court in order that the juvenile court make disposition in the case based upon the guilty finding in the court of waiver.

Or.Rev.Stat. § 419C.361 (1995).[3] In addition, Behl points to Minnesota's extended-jurisdiction juvenile statute ("EJJ") and its provision that

> a child prosecuted as an extended jurisdiction juvenile after designation by the prosecutor in the delinquency petition is convicted of an offense after trial that is not an offense described in subdivision 1, clause (2) [presumptive commitment], the court shall adjudicate the child delinquent and order a disposition under section 260.185.

Minn.Stat. § 260.126, subd. 4(b) (1996).

We find neither of these arguments particularly persuasive, however. The fact that Oregon's legislature included within the statute a specific clause providing for a return to juvenile court of an automatically certified juvenile actually indicates that a lack of simi-

---

**3.** Likewise, the Michigan statute interpreted in *People v. Veling,* 443 Mich. 23, 504 N.W.2d 456 (1993), requires that the judge of the court with jurisdiction over a juvenile "shall conduct a hear-

ing at the juvenile's sentencing to determine if the best interest of the public would be served by placing the juvenile on probation and committing the juvenile to a state institution or agency

lar language in the Minnesota statute prohibits such a return. Likewise, the explicit sentencing provisions in the EJJ statute, which was part of the same bill as Minnesota Statutes section 260.015,[4] indicate that the legislature's silence on the issue was intentional and unambiguous. Had the legislature intended the district court to adjudicate such defendants as juveniles, it is probable the legislature would have done as it did with the EJJ statute and explicitly provided for an adjudication.

Consequently, we hold that the legislature's failure to provide for a transferring mechanism was intentional and therefore unambiguous, and that the district court had no statutory authority either to transfer the case to juvenile court for disposition, or to give the defendant a hearing to determine whether the defendant should be sentenced as an adult or adjudicated as a juvenile.

## B. Constitutional challenges

▉ Conceding the legitimacy of district court *jurisdiction* for the purposes of determining guilt or innocence for both the enumerated charge and any other charges arising out of the same behavioral incident, Behl contends that the statute's imposition of the adult-sentencing mechanism following an acquittal of the enumerated offense violates his rights to procedural due process, substantive due process and equal protection. "In evaluating challenges to the constitutionality of statutes, this court recognizes that the interpretation of statutes is a question of law." *In re Blilie*, 494 N.W.2d 877, 881 (Minn.1993) (citation omitted). Accordingly, this court " 'is not bound by the lower court's conclusions.' " *Id.* (quoting *Sherek v. Independent Sch. Dist. No. 699, Gilbert*, 449 N.W.2d 434, 436 (Minn.1990)). "Minnesota statutes are presumed constitutional, and our power to declare a statute unconstitutional should be exercised with extreme caution and only when absolutely necessary." *In re Haggerty*, 448 N.W.2d 363, 364 (Minn.1989) (citation omitted). "[T]o challenge successfully the constitutional validity of a statute, the challenger bears the very heavy burden of demonstrating beyond a reasonable doubt that

the statute is unconstitutional." *State v. Merrill*, 450 N.W.2d 318, 321 (Minn.), *cert. denied*, 496 U.S. 931, 110 S.Ct. 2633, 110 L.Ed.2d 653 (1990).

A federal appeals court concluded in 1972 that adult-court *jurisdiction* based upon the charging of specific enumerated offenses did not violate a juvenile's procedural due process, substantive due process or equal protection rights. *United States v. Bland*, 472 F.2d 1329 (D.C.Cir.1972), *cert. denied*, 412 U.S. 909, 93 S.Ct. 2294, 36 L.Ed.2d 975 (1973); *cf. In re Welfare of L.J.S. and J.T.K*, 539 N.W.2d 408 (Minn.App.1995) (concluding that automatic certification as extended-jurisdiction juvenile did not violate due process or equal protection), *pet. for rev. denied* (Minn., Jan. 25, 1996). The basis for Behl's claims, however, is that automatic district court *sentencing* for non-enumerated crimes violates procedural due process, substantive due process and equal protection. As a result, the D.C. Circuit Court's decision in *Bland*, although helpful, is not persuasive.

### 1. Procedural due process

▉ To successfully raise a claim that the state has denied a person procedural due process, the claimant must establish the loss of a protectable property or liberty interest. *Ingraham v. Wright*, 430 U.S. 651, 672, 97 S.Ct. 1401, 1413, 51 L.Ed.2d 711 (1977); *Snyder v. City of Minneapolis*, 441 N.W.2d 781, 791 (Minn.1989). Although the imposition of the adult criminal sentence in the case at bar will deprive Behl of his liberty, this deprivation occurred only after he received a trial that provided him with the utmost procedural due process protections. *See In re Gault*, 387 U.S. 1, 29, 87 S.Ct. 1428, 1444–45, 18 L.Ed.2d 527 (1967) (noting that the adult criminal process provides safeguards pursuant to rights afforded by the constitution). Because Behl failed to assert what additional liberty or property interest was denied, it must be assumed he was referring to his "right" or "interest" in receiving a juvenile disposition, rather than an adult sentence.

▉ While it is true that the United States Supreme Court held that the imposition of

---

* * *." Mich. Comp. Laws 769.1 § 1(3) (Supp. 1997).

4. Act of May 5, 1994, ch. 576, 1994 Minn. Laws 934, 939, 945–47.

juvenile court jurisdiction provided a person with a protectable interest in a juvenile adjudication, *Kent v. United States*, 383 U.S. 541, 553–56, 86 S.Ct. 1045, 1053–55, 16 L.Ed.2d 84 (1966), the D.C. Circuit Court concluded that this interest did not attach until the juvenile court attained jurisdiction. *Bland*, 472 F.2d at 1336 n. 26. Procedural due process, therefore, requires a *juvenile court* to grant a hearing before waiving its jurisdiction and certifying a juvenile to criminal court. *Kent*, 383 U.S. at 552–54, 86 S.Ct. at 1052–54; *see also* Minn.Stat. § 260.125 (establishing procedure for adult certification by the juvenile court). Procedural due process, however, requires no such hearing for *automatic certification* because the juvenile court never had jurisdiction over the juvenile. *Bland*, 472 F.2d at 1335.

■ We likewise conclude that a person does not acquire a protectable interest in a juvenile disposition until the juvenile court has asserted its jurisdiction over the case. *Bland*, 472 F.2d at 1348 (Skelly Wright, C.J., dissenting) (acknowledging that juvenile court "is another system of justice" that necessarily includes "a different penalty structure, and a different philosophy of rehabilitation"). Because the automatic-certification statute precludes juvenile court jurisdiction from attaching, we hold that Behl did not suffer the loss of a "right" or "interest" for which he was entitled to receive a fair hearing.

### 2. Substantive due process

■ Behl next contends that the automatic imposition of an adult sentence for a non-enumerated offense violates his substantive due process rights. Unless a fundamental right is at stake, judicial scrutiny of the substance of state legislation under the due process clause is not exacting. *Bowers v. Hardwick*, 478 U.S. 186, 191–96, 106 S.Ct. 2841, 2844–47, 92 L.Ed.2d 140 (1986). Under this standard, substantive due process requires only that legislative enactments not be arbitrary or capricious or, stated another

way, that they be a reasonable means to a permissive object. *See Contos v. Herbst*, 278 N.W.2d 732, 741 (Minn.1979). We hold that no person, regardless of age, has a fundamental right to juvenile adjudication, which necessarily would include a juvenile disposition. *See Marine v. State*, 607 A.2d 1185, 1207 (Del.1992) ("The distinction drawn by the statutory scheme, based on the crime with which a defendant is charged, is not a suspect classification, nor does it involve a fundamental right."); *People v. Jiles*, 43 Ill.2d 145, 251 N.E.2d 529, 531 (1969) (stating that nothing in the federal constitution requires states to create a juvenile court); *see also* Barry C. Feld, *Reference of Juvenile Offenders for Adult Prosecution: The Legislative Alternative to Asking Unanswerable Questions*, 62 Minn. L.Rev. 515, 560–61 (1978) ("To the extent such a right exists, it exists because the legislature has created it, and what the legislature has created, it can take away."); *but see Bland*, 472 F.2d at 1348 (Skelly Wright, C.J., dissenting) (stating that even a " 'guilty' child may, under certain circumstances, have a right to be charged as a juvenile"). Consequently, the statute's automatic imposition of a district court *sentence* on the basis of an enumerated *charge* would violate Behl's substantive due process rights only if it is not a reasonable means to a permissive object.

At the outset, we note that the Minnesota Court of Appeals has found that *offense* criteria used to establish presumptions for the *judicial* certification process are reasonable means to permissive ends. *See L.J.S. and J.T.K.*, 539 N.W.2d at 412–13. Although instructive, this decision does not necessarily lead us to the conclusion that the use of an enumerated offense to establish district court jurisdiction for non-enumerated crimes is a reasonable means to a permissive end. Under Minnesota's judicial waiver statute, the enumerated charge is one of only six factors upon which a juvenile court can certify a juvenile for district court. Minn.Stat. § 260.125.[5] A dismissal or acquittal of the enumerated charge, therefore, does not nec-

---

5. Those six factors are: seriousness of the alleged offense, the culpability of the child in committing the offense, the child's prior record of delinquency, the child's programming history, the adequacy of punishment or programming available, and the dispositional options available for the child. Minn.Stat. § 260.125, subd. 2b.

essarily extinguish the entire basis upon which the court certified the juvenile. Under Minnesota's automatic-waiver statute, however, the enumerated charge is the only basis upon which the juvenile has been certified. Minn.Stat. § 260.015, subd. 5(b). Consequently, a dismissal or acquittal of that charge necessarily extinguishes the entire basis upon which the juvenile was certified.

> [I]f the rationale of the [automatic] classification is that juvenile court treatment is inappropriate for those who commit certain offenses, then regardless of the initial charge, if an individual is subsequently found not to have committed one of the offenses excluded from juvenile court jurisdiction, he should be returned to that court. Return to juvenile court is certainly consistent with the statutory policies providing for differential treatment on the basis of offense committed.

Barry C. Feld, *Reference of Juvenile Offenders for Adult Prosecution: The Legislative Alternative to Asking Unanswerable Questions,* 62 Minn. L.Rev. 515, 563–64 (1978) (footnote omitted).

Such a connection becomes even more tenuous when we consider sentencing as opposed to jurisdiction. Unlike the defendants who argued that adult court *jurisdiction* based on enumerated charges violated their substantive due process rights, Behl argues that district court *sentencing* for non-enumerated crimes based only on charges of enumerated crimes violates his substantive due process rights. The consideration for this court, therefore, is whether district court sentencing of a juvenile who is indicted for, but not convicted of, the enumerated offense is arbitrary and capricious.

Although we might prefer that the legislature would have provided the district court with the option to adjudicate as juveniles those defendants in situations similar to Behl's, we hold that the failure to provide such an option is not arbitrary and capricious. The power to define appropriate punishment for criminal conduct rests with the legislature as a corollary to its broader power to define what acts constitute criminal conduct. *State v. Osterloh,* 275 N.W.2d 578, 580 (Minn.1978). It is at least rational to

conclude that juveniles over the age of 16 who have undertaken conduct sufficient to invoke an indictment for first-degree murder, are more dangerous and less amenable to the treatment provided by the juvenile system.

### 3. Equal protection

The guarantee of equal protection of the laws requires that the state treat all similarly situated persons alike. *State v. Northwestern Preparatory School, Inc.,* 228 Minn. 363, 365, 37 N.W.2d 370, 371 (1949). It does not require the state to treat things that are different in fact or opinion as though they were the same in law. *Baker v. Nelson,* 291 Minn. 310, 314 n. 4, 191 N.W.2d 185, 187 n. 4 (1971) (citations omitted). Facial distinctions based on age and charged offenses do not create suspect classifications. *Bland,* 472 F.2d at 1336–37. As a result, the automatic-certification statute violates equal protection of the laws only if its offense-based distinction is not rationally related to a legitimate government interest. *Id.* at 1333–34.

It is clear that the portion of the automatic-certification statute that creates adult-court *jurisdiction* based upon age and offense criteria is rationally related to the legitimate government interests of serving public safety and determining if the defendant is amenable to juvenile rehabilitation. *Id.* at 1334 (noting that definition of adult-court jurisdiction reflected legislative concern over rising juvenile crime rates and the growing juvenile recidivism rate). Unlike those defendants who challenged automatic adult-court *jurisdiction* based upon age and charged-offense criteria, however, Behl is challenging automatic district court *sentencing* that is based upon an offense for which Behl was indicted, but not convicted. More particularly, Behl is arguing that it is not rationally related to any legitimate government interest to subject two persons convicted of the same crime to completely different sentencing mechanisms simply because one person was indicted for first-degree murder and the other person was not. The state, on the other hand, argues only that such a distinction is rational because first-degree murder is the most serious criminal offense in Minnesota. Although this invariably is

true, the fact remains that Behl did not commit such an offense. Consequently this issue will turn on whether it is reasonable to sentence a juvenile who is *merely indicted* for first-degree murder much more harshly than a similarly convicted (or adjudicated delinquent) juvenile who was not indicted for first-degree murder.

Although the state failed at oral argument to assert a rational basis upon which to base this different treatment, we conclude that the grand jury's finding of probable cause necessary to automatically certify a juvenile provides such a basis. As it stands now, the state can automatically prosecute as adults only those juveniles who, after becoming 16 years of age, are alleged to have committed first-degree murder. Minn.Stat. § 260.015, subd. 5(b). Minnesota law, meanwhile, requires indictments before the state can prosecute any criminal defendant alleged to have committed first-degree murder. Minn. R.Crim. P. 17.01 (requiring indictments before the state can prosecute offenses punishable by life imprisonment); Minn.Stat. § 609.185 (1996) (requiring sentence of life imprisonment for those persons convicted of first-degree murder). While it is true that an indictment does not prove the juvenile committed first-degree murder, the indictment is proof that a grand jury found facts sufficient to furnish probable cause that the juvenile has committed first-degree murder. The dissent considers such a distinction to be unpersuasive, but it should be noted that no suspect classification is at issue in this case, and as such, we must analyze the constitutional validity of this statute under the most deferential of standards. As a result, we conclude that such a finding is at least a rational basis upon which to expose a juvenile who is within two years of becoming a legal adult to the more harsh sentences imposed in district court.

## II.

■ We next consider whether the district court's imposition of a 72–month sentence was appropriate. The court concluded that Behl's possession of the short-barrelled shotgun was a separate behavioral incident. It, therefore, imposed a concurrent sentence for 12 months and 1 day and assessed Behl one criminal history point for the conviction. The court then departed 25 percent upward from the presumptive sentence of 58 months (based on one criminal history point) on the manslaughter conviction and sentenced Behl to 72 months. Behl contends the court erred in assessing him one criminal history point for the shotgun conviction, but does not appeal the subsequent 25 percent upward departure.

Behl concedes that possession of the short-barrelled shotgun was a separate behavioral incident, and that the state had the right to sentence him separately for that conviction. He asserts, however, that such a conclusion necessarily strips the district court of its jurisdiction to adjudicate the charge, and therefore renders the conviction, as well as any subsequent assessment of a criminal history point, invalid.

The district court's jurisdiction over the juvenile in this case was based exclusively on section 260.015, subdivision 5(b). As a result, the district court had jurisdiction over the first-degree murder charge and any other charges arising out of the same behavioral incident. *See* Minn. R. Juv. P. 18.08. Any other charges necessarily fell within the original and exclusive jurisdiction of the juvenile court. Minn.Stat. § 260.015, subd. 5(a)(1) (defining delinquent child as a child "who has violated any state or local law"). Both the trial court and court of appeals concluded, and Behl now concedes, that the shotgun charge was not based on the same behavioral incident as the first-degree murder charge. Consequently, the district court did not have jurisdiction to adjudicate this charge, and could not, a fortiori, convict, sentence and then assess a criminal history point based upon this charge.

We therefore reverse the conviction for possession of short-barrelled shotgun and remand to the district court for sentencing in accordance with this ruling. Although our decision precludes the assessment of a criminal history point for possession of a short-barrelled shotgun, we note that the district court in assessing its sentence can consider all the circumstances, including the fact that the defendant utilized a short-barrelled shot-

gun in the killing and any other factors that would support either an upward or downward departure from the sentencing guidelines.[6]

KEITH, Chief Justice (dissenting).

After recognizing silence in the automatic certification statute and constitutional concerns with allowing adult-court sentencing, the court nevertheless concludes that Donn Behl was properly sentenced in district court. Because this interpretation of statutory silence conflicts with the overall statutory scheme and simple but fundamental notions of fairness, I dissent.

Unless express statutory language is free from ambiguity, our task is to determine the legislature's intent. Minn.Stat. § 645.16 (1996). In so doing, we may consider the legislative purpose and the consequences of a particular interpretation. *Id.* § 645.16(4), (6). This court has long held that statutes are to be given a sensible construction that avoids unreasonable, unjust, or absurd results. *Thoresen v. Schmahl,* 222 Minn. 304, 311, 24 N.W.2d 273, 277 (1946); *see also* Minn.Stat. § 645.17(1).

In this case, the question is the intended reach of the automatic certification statute. The relevant portions of the statute explain when a delinquent child—who would ordinarily proceed through the juvenile justice system, Minn.Stat. § 260.111, subd. 1—is subject to adult-court jurisdiction. The statute states that juvenile courts "lack[ ] jurisdiction over proceedings concerning" children "alleged to have committed murder in the first degree after becoming 16 years of age." *Id.* §§ 260.111, subd. 1a, 260.015, subd. 5(b). When an allegation of first-degree murder is made by the state, the district courts assume "original and exclusive jurisdiction." *Id.* § 260.111, subd. 1a.

The key term to be interpreted is "alleged." In my view, the best reading of the statute, in light of its underlying purposes, is that a juvenile offender is no longer "alleged" to have committed first-degree mur-

der once he or she is actually *acquitted* by a jury in a district court. This is the situation in which Behl found himself once the jury concluded that he was not guilty of the charge that served as the one and only basis for adult-court jurisdiction. There is no question that the state's allegation was sufficient to *trigger* adult-court jurisdiction. But after the jury rejected the state's allegation of first-degree murder, the statutory basis and rationale for adult-court jurisdiction was eliminated. Reading the statute as a whole, it is reasonable to conclude that the legislature intended that certain first-degree murder charges be removed from juvenile court based on the seriousness of the allegation, but that adult-court jurisdiction terminates when the allegation is not accepted by the jury. This interpretation preserves the integrity of the legislature's provision for juvenile-court dispositions.

The majority concludes that the statute is "silent" on the issue of whether adult-court jurisdiction ends when a child is acquitted of a first-degree murder charge, but convicted of other charges. *Ante* at 564–565. The court then proceeds to search for legislative intent. According to the majority, the sole reasons for sentencing Behl in an adult court are that Oregon law explicitly provides for a different—and fairer—result; and that an independent section of the Juvenile Code regarding "extended jurisdiction juvenile prosecutions" permits a court to impose a juvenile disposition when the child is convicted of an offense other than an enumerated criminal offense, Minn.Stat. § 260.126, subd. 4(b).

The majority's reasoning is unpersuasive. First of all, comparing Minnesota statutes to Oregon statutes gives little insight into the intent of the Minnesota legislature. Even more puzzling is the court's reference to extended jurisdiction juvenile (EJJ) prosecutions. The EJJ provisions simply do not create an avenue for "return to juvenile court" for sentencing, as the majority contends. *Ante* at 566. The court misunderstands the meaning of the EJJ provisions.

**6.** Because the district court relied upon a criminal history point for the shotgun conviction, it intentionally did not consider the nature of the weapon in determining Behl's sentence. Now that the criminal history point has been removed, the court once again can consider this fact in its sentence determination.

In essence, EJJ prosecutions are part of the *juvenile* court's extended jurisdiction; they are a hybrid alternative to adult certification that allows the juvenile court to *retain* the proceedings, with the possibility of imposing an adult criminal sentence.[1] EJJ provisions are no indication that silence in the automatic certification statute implies that Behl should receive an adult-court sentence. In fact, by the majority's own logic, the fact that the EJJ provisions actually allow a juvenile court to impose both a juvenile disposition and an adult sentence could be taken as a sign that the legislature knew how to express its preference for adult sentencing. In the case of juveniles acquitted after automatic certification, the legislature made no such expression. At best, the EJJ provisions—which do not discuss or relate to district court sentencing jurisdiction in automatic certification cases, Minn.Stat. § 260.126, subd. 6—provide no support for the majority's conclusion.

The weakness of the majority's rationale would not be so troubling if the results seemed fair to juveniles like Behl.[2] But the unavoidable consequence of the court's reasoning is that a child who is indicted but *acquitted* of the enumerated offense (first-degree murder) faces the harsher sentencing regime that the legislature crafted for adult perpetrators, while a child who was fortunate enough not to be indicted for first-degree murder in the first place is sentenced according to the juvenile court rules. This is not a result that the legislature envisioned. In my opinion, the automatic certification statute establishes a simple and legitimate policy: anyone over the age of 16 who commits first-degree murder will receive a life sentence. The statute does *not* say that certain juveniles should be treated "much more harshly," *ante* at 569, simply because they have been indicted, and despite exoneration by a jury. To do so, it seems, is to punish the juvenile for a crime he or she did not commit. Rather than enter a constitutional thicket, and absent clear direction from the legislature, I would interpret the controlling statutory language to avoid this result.

If, as the majority concludes, the statute is silent and we must identify the legislature's intent, then I see no reason to prefer the more punitive result over a juvenile disposition. In fact, Behl's argument is only strengthened insofar as our general rules of statutory construction apply. This court has made clear that the ambit of an ambiguous criminal law should be construed narrowly according to the rule of lenity, *State v. Orsello,* 554 N.W.2d 70, 74 (Minn.1996); *State v. Niska,* 514 N.W.2d 260, 265 (Minn.1994), and we have applied this rule of construction to ambiguous minimum and extended adult sentencing provisions, *State v. Lubitz,* 472 N.W.2d 131, 133 (Minn.1991); *State v. Simmons,* 258 N.W.2d 908, 910 (Minn.1977). Faced with some uncertainty as to the proper scope of the automatic certification statute, I would apply this sensible and established rule and conclude that the district court lacked jurisdiction to sentence Behl.[3] Thus, if there is to be a presumption about

1. *See, e.g.,* Minn.Stat. § 260.125, subds. 2(6)(ii), 5 (referring to *retention* of juvenile-court jurisdiction); *id.* § 260.126, subds. 4–5; *In re K.M.,* 544 N.W.2d 781, 785 (Minn.App.1996); Barry C. Feld, *Violent Youth and Public Policy: A Case Study of Juvenile Justice Law Reform,* 79 Minn. L.Rev. 965, 1038–51 (1995) (quoting *Minnesota Supreme Court Advisory Task Force on the Juvenile Justice System, Final Report* 32–33 (1994) (the purpose behind EJJ is to give the juvenile "one last chance at success in the juvenile system, with the threat of adult sanctions as an incentive not to re-offend")).

2. Instead of receiving a juvenile disposition for his second-degree manslaughter conviction, Behl was sentenced to 72 months in prison. No *adult* has received a longer sentence for this offense in recent reported cases.

3. When there is ambiguity in a federal sentencing statute, the United States Supreme Court disagrees over the priority of the rule of lenity among various rules of construction. *See United States v. R.L.C.,* 503 U.S. 291, 305–06 & n. 6, 112 S.Ct. 1329, 1338 & n. 6, 117 L.Ed.2d 559 (1992) (Souter, J.) (plurality opinion) (adopting the more lenient interpretation of a sentencing provision in the federal Juvenile Delinquency Act, but concluding that the rule of lenity was unnecessary because it should only be invoked after considering the statutory language, structure, legislative history, and underlying policies); *id.* at 307–08, 112 S.Ct. at 1339–40 (Scalia, J, joined by Kennedy & Thomas, JJ., concurring) (agreeing with the result, but arguing that the rule of lenity should be the first and only rule of construction). But the Court agrees that the rule of lenity is *relevant.* The majority in this case fails to confront this basic rule of construction.

the legislature's intent regarding juvenile sentencing jurisdiction, the past interpretive practices of this court indicate that juvenile-court jurisdiction and its well-tailored dispositions should prevail. *Cf. State v. Moseng,* 254 Minn. 263, 269, 95 N.W.2d 6, 11 (1959) (in the absence of a clear statement from the legislature, a statute's penal features should be strictly construed and its remedial features liberally construed); *State v. Shevlin–Carpenter Co.,* 99 Minn. 158, 162, 108 N.W. 935, 936 (1906) (same).[4]

An exception in our Juvenile Code defines certain children out of the juvenile justice system. When Donn Behl was acquitted of first-degree murder, the statutory exception no longer applied to him. He was entitled, therefore, to be sentenced for second-degree manslaughter according to the rules that the legislature intended to be used for juveniles. Any gap or ambiguity in the automatic certification provision should be interpreted in a way that makes sense in view of the entire juvenile justice system, avoids any constitutional infirmity, keeps faith with established rules of statutory construction, and comports with basic fairness in sentencing. *See* Minn. R. Juv. P. 1.02. The court fails to provide any convincing reason why we should conclude otherwise.

I dissent.

GARDEBRING, Justice (dissenting).

I join in the dissent of the Chief Justice.

STRINGER, Justice (dissenting).

I join in the dissent of the Chief Justice.

---

4. It is always preferable for the legislature to deal directly with statutory issues such as this. But when a statute is not clear, this court should

---

employ settled rules of interpretation as a guide to the legislature's intent; otherwise, we jeopardize clarity and predictability in our own decision-

making process. If a different result is preferred by our legislators, it is for them to examine the issue and make their intent clear.