Richard LeBEAU, as parent of Bailey LeBeau, a minor, Appellant,

v.

**JOHN DEERE INSURANCE COMPANY, Respondent.**

No. C0–97–1402.

Court of Appeals of Minnesota.

Jan. 27, 1998.

Review Denied March 26, 1998.

Robert H. Magie, Magie, Andresen, Haag, Paciotti, Butterworth & McCarthy, Duluth, for appellant.

Gregory J. Johnson, Johnson & Van Vliet, L.L.P., St. Paul, for respondent.

Considered and decided by KLAPHAKE, P.J., and HUSPENI and HARTEN, JJ.

## OPINION

KLAPHAKE, Judge.

Following an out-of-state automobile accident, appellant Richard LeBeau entered into a minor settlement on behalf of his minor daughter, and then sued his Minnesota no-fault insurer, respondent John Deere Insurance Company (John Deere), claiming entitlement to benefits for medical expenses incurred after the settlement. John Deere refused to pay the claim, arguing that the parties intended to include those medical expenses in the minor settlement. After trial on stipulated facts, the district court agreed with John Deere and granted judgment in its favor. We affirm the district court's conclusion that John Deere is not liable for any payment to LeBeau that would result in a double recovery, but conclude that LeBeau has a proper claim against John Deere for $500.05, which would not constitute a double recovery.

## FACTS

LeBeau's daughter was injured in a May 1992 motor vehicle accident in Wisconsin. At the time of the accident, she was a passenger in LeBeau's vehicle, which was insured by John Deere pursuant to the Minnesota no-fault automobile insurance act, Minn.Stat. §§ 65B.41–.71 (1990).

The accident occurred when a vehicle owned and operated by Dorothy Larson collided with LeBeau's vehicle. As a result of the accident, LeBeau's daughter injured her nose and incurred a total of $519.32 in medical expenses between May 1992 and November 1994. Larson's insurer paid those medical expenses.

In November 1994, a physician recommended that LeBeau's daughter undergo future surgery on her nose. The physician believed the surgery would cost $9,000.

LeBeau brought a tort claim against Larson and her insurer. LeBeau agreed to settle the claim for $25,000, and the minor settlement was submitted to the district court for approval. The court approved the settlement and also approved claims by LeBeau's attorneys in the amount of $2,755 for the costs of the settlement, including reasonable attorney fees, thus reducing the net settlement amount to $22,245. In approving the settlement, the court was aware of the recommendation that LeBeau's daughter undergo nose surgery. The release settled all possible claims by LeBeau or his daughter, including claims for future medical expenses.

In July 1996, LeBeau's daughter had plastic surgery for her nose. The total cost of the surgery was $8,508.25. LeBeau submitted a claim for the surgery to John Deere, which refused coverage, claiming that the cost of the surgery had been included in the settlement and release, and that LeBeau was seeking a double recovery in violation of the no-fault act.

LeBeau sued John Deere, and a trial was conducted on stipulated facts. The district court found that LeBeau would receive an impermissible double recovery if John Deere were to reimburse him for surgery expenses, which were considered by all parties and by the court at the time of the minor settlement.

The court recognized that John Deere's subrogation rights had not yet been triggered because John Deere could only assert those rights after it had paid a claim to LeBeau resulting in double recovery. But the court explained that if it were to require John Deere to pay LeBeau's claim, such payment would result in a double recovery, triggering John Deere's subrogation rights and bringing the case again before the court. Therefore, under the narrow facts of this case, and in the interests of judicial economy, the court decided that John Deere was not required to pay LeBeau's claim.

## ISSUE

Did the district court err by concluding that John Deere could refuse to pay a claim for medical expenses that would result in double recovery to LeBeau?

## ANALYSIS

An occupant of a motor vehicle that is insured pursuant to the no-fault act is entitled to collect basic economic loss benefits from an insurer, even if the accident occurs in another state. Minn.Stat. § 65B.46, subd. 2 (1990). Basic economic loss benefits include payments for medical expenses. Minn. Stat. § 65B.44, subds. 1, 2 (1990). Basic economic loss benefits are payable when an expense is incurred. Minn.Stat. § 65B.54 subd. 1 (1990).

Because LeBeau's accident occurred in Wisconsin, John Deere ordinarily would be entitled to assert subrogation[1] rights against LeBeau after paying a claim for medical expenses, if that payment were to result in double recovery by LeBeau. Minn.Stat. § 65B.53, subd. 2 (1990). But LeBeau settled the tort action before he incurred additional medical expenses for his daughter's surgery. LeBeau claims that he is entitled to recover from John Deere any medical expenses incurred after the settlement, and that a no-fault insurer has no subrogation rights under Minn.Stat. § 65B.53 in the situation where basic economic loss accrues after a tort settlement.

The parties cite *Ferguson v. Illinois Farmers Ins. Group Co.,* 348 N.W.2d 730 (Minn.1984). There, the supreme court held that when an insured recovers a judgment against a tortfeasor, the insured's expected medical expenses may not be deducted from the judgment and assigned to the no-fault carrier. Rather, the insured should receive the entire judgment from the tortfeasor, less the costs of collection, including reasonable attorney fees. Then, after the insured has exhausted the damages allocated for medical expenses, the insured may recover any additional medical expenses from the no-fault insurer. *Id.* at 730.

LeBeau argues that critical to *Ferguson* was the fact that the insured received a judgment that included a specific identifiable recovery allocated to future medical expenses. But here, although LeBeau did not receive a judgment against Larson, he did agree to a settlement which, like the judgment in *Ferguson,* allocated a specific amount for expected medical expenses.[2] Therefore, applying *Ferguson,* to avoid double recovery, LeBeau must first exhaust the amount of the settlement allocated for expected medical expenses, less costs of collection and reasonable attorney fees, before he is entitled to recover any medical expenses from John Deere.

The total amount of LeBeau's settlement was $25,000, including $9,000 for expected medical expenses. From the $25,000, the district court deducted $2,755, or 11.02%, for costs of collection and reasonable attorney

---

1. Although the legislature and the courts use the term "subrogation," the right of recovery lies against the insured and stems from equitable concepts, rather than from tort. *Milbrandt v. American Legion Post,* 372 N.W.2d 702, 705 n. 2 (Minn.1985).

2. The parties do not dispute the district court's finding that LeBeau's settlement included the $9,000 for his daughter's expected surgery expenses.

fees. When the amount of $9,000 is similarly reduced by the 11.02% costs of collection and attorney fees, the resultant $8,008.20 represents the net amount of future medical expenses that LeBeau must exhaust pursuant to *Ferguson* before he may recover no-fault benefits from John Deere.

The actual cost of the surgery was $8,508.25. Because this amount exceeds $8,008.20, LeBeau has in fact exhausted the amount of future medical expenses attributable to the settlement and has stated a proper claim against John Deere for the balance of $500.05.

■ LeBeau did not include the above calculations in his briefs to this court, and he apparently made a tactical decision not to do so. However, undisputed evidence in the record supports our calculations, and in response to questioning by this court at oral argument, the parties fully addressed the issue to our satisfaction. Therefore, in the interest of judicial economy,[3] we hold that when either a judgment against or a settlement with a tortfeasor includes a designated amount for expected medical expenses, that amount must be reduced proportionally by the total costs of collection, including reasonable attorney fees, and that net amount must be exhausted before the insured seeks to recover any additional medical expenses from the no-fault carrier.

We note that if the district court had required John Deere to pay LeBeau's claim for the surgery, such payment would result in a double recovery to the extent of $8,008.20, triggering John Deere's subrogation rights and bringing the case again before the court. The district court's decision to instead resolve the parties' entire dispute is supported by an overriding purpose of the no-fault act, which is to avoid "[t]he detrimental impact of automobile accidents * * * upon the orderly and efficient administration of justice in this state[.]" Minn.Stat. § 65B.42; *accord* Minn. Stat. § 65B.42(4) (reiterating this purpose by stating that the no-fault act is intended "[t]o

speed the administration of justice, [and] to ease the burden of litigation on the courts of this state").

## DECISION

The district court properly concluded that John Deere is not liable to pay any amount of LeBeau's claim that would result in a double recovery; the record indicates, however, that the payment of $500.05 would not result in a double recovery.

**Affirmed as modified.**

HARTEN, Judge (concurring in part and dissenting in part).

I concur with the court to the extent of its affirmance; but because the court stretches beyond the factual record to modify its affirmance, I respectfully dissent from the modification.

This case was presented to the district court upon formal Stipulation of Facts, which states, among other things, that

> [t]he parties agree that the stipulated facts and exhibits are sufficient to form a basis for a judicial determination of the respective rights of the parties herein and *that no additional facts or evidence will be filed, submitted nor argued to the Court.* (Emphasis added).

Nowhere in the stipulation of facts or exhibits is there mention of the amount of attorney fees and costs of collection for the future medical expenses included in the minor settlement. It is obvious why the district court did not consider the issue—it was *purposefully not presented* to the district court. As appellant's counsel indicated at oral argument, not raising the issue in the district court, or on appeal, was a deliberate choice undertaken as a matter of litigation strategy. We routinely decline to address issues for the first time on appeal. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (appellate court reviews only issues presented to and considered by district court).

---

**3.** See *Watson v. United Servs. Auto. Ass'n,* 566 N.W.2d 683, 687–88 (Minn.1997) (new issue may be addressed on appeal when "no possible advantage or disadvantage to either party in not having had a prior ruling by the trial court on

the question" because issue is plainly decisive of entire controversy on its merits; issue is a novel, legal issue of first impression; and issue is not dependent on new or controverted facts) (emphasis omitted).

In its opinion, the court indicates that "the parties fully addressed the issue to our satisfaction." In fact, the issue was introduced and addressed at oral argument by pointed questions from the bench. At no time did counsel agree to extend the stipulated record.

Because the court modifies on an issue that was neither considered in the district court, nor raised or briefed on appeal, I would affirm the district court judgment in its entirety.