Sharon **NELSON**, Appellant,

v.

**AMERICAN FAMILY INSURANCE GROUP, Respondent.**

No. C4–01–226.

Court of Appeals of Minnesota.

Aug. 28, 2001.

Daniel L. Giles, Christenson, Stoneberg, Giles & Stroup, P.A., Marshall, MN, for appellant.

Richard Dale, Sioux Falls, SD, for respondent.

Considered and decided by TOUSSAINT, Chief Judge, HALBROOKS, Judge, and LINDBERG, Judge.*

## HALBROOKS, Judge

Appellant won a jury verdict in South Dakota against a negligent driver for losses stemming from a motor-vehicle accident that occurred in South Dakota. She subsequently brought a lawsuit in Minnesota to recover no-fault benefits from her insurer. On cross-motions for summary judgment, the district court granted respon-

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

dent's motion and dismissed appellant's no-fault wage-loss claim. Appellant contends that she is entitled to wage-loss benefits that her insurer should have paid her before the South Dakota verdict was rendered. Appellant asserts that neither the statutory set-off provision nor the theories of accord and satisfaction, collateral estoppel, or res judicata bar her claims. Because appellant has been compensated for her wage loss, and receipt of no-fault wage-loss benefits would result in a duplicate recovery, we affirm. We do not reach the issues of whether any legal theory advanced by respondent bars appellant's claim.

## FACTS

Appellant Sharon Nelson had automobile insurance with respondent American Family Insurance Group. On March 2, 1990, appellant was involved in a motor-vehicle accident, and, pursuant to her no-fault coverage, respondent paid her the maximum of $20,000 in wage-loss benefits. On May 16, 1991, appellant was involved in a second automobile accident that occurred in South Dakota. Respondent denied appellant's claim for wage-loss benefits arising out of the second accident on the ground that she had not been medically released to return to work by the time the second accident occurred. Appellant never sought arbitration of her no-fault claims pursuant to Minn.Stat. § 65B.525 (Minn. 2000).

Appellant brought a tort claim in South Dakota against the other driver in the May 16, 1991 accident. The jury awarded appellant $37,000 for past wage loss, $53,000 for loss of future earning capacity, and $16,000 for future medical expenses. The judgment was paid in full.

Following the verdict, appellant sued respondent in Minnesota for breach of contract. The parties settled appellant's claim for medical benefits related to the second accident. Respondent filed a motion for summary judgment on the remaining claim for no-fault wage-loss benefits.

The district court granted summary judgment in favor of respondent. The court held that, in light of the South Dakota jury's award of $37,000 for past wage loss, "awarding further loss of income damages would frustrate the purpose of the No Fault act by allowing duplicative recovery." This appeal follows.

## ISSUES

1. Did the district court err in its interpretation of the no-fault act?

2. Is respondent entitled to the defenses of res judicata, collateral estoppel, or accord and satisfaction?

## ANALYSIS

### I.

This is a case of first impression. Because the question requires us to determine the intent and effect of the no-fault act, our review is de novo. *American Family Ins. Group v. Schroedl*, 616 N.W.2d 273, 277–78 (Minn.2000). A statute should be interpreted, whenever possible, to give effect to all of its provisions; "no word, phrase, or sentence should be deemed superfluous, void, or insignificant." *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999) (citing *Owens v. Federated Mut. Implement & Hardware Ins.*, 328 N.W.2d 162, 164 (Minn.1983)). When construing a statute, a court's goal is to ascertain and effectuate the intention of the legislature. *Id.*

In the case of the no-fault act, the legislature has stated the statute's purpose clearly:

To relieve the severe economic distress of *uncompensated* victims of automobile accidents within this state by requiring

automobile insurers to offer and automobile owners to maintain automobile insurance policies or other pledges of indemnity which will provide prompt payment of specified basic economic loss benefits to victims of automobile accidents without regard to whose fault caused the accident;

\* \* \* \*

To correct imbalances and abuses in the operation of the automobile accident tort liability system, to provide offsets to *avoid duplicate recovery,* \* \* \* and to govern the effect of advance payments prior to final settlement of liability.

Minn.Stat. § 65B.42 (2000) (emphasis added). When an insured seeks recovery against a tortfeasor, the no-fault act does not "impair or limit tort liability or limit the damages recoverable from any person . for negligent acts or omissions." Minn. Stat. § 65B .51, subd. 5 (2000). Rather, to avoid a double recovery in negligence actions, the statute directs a Minnesota court to offset any tort award by the amount of basic economic benefits already paid or payable by the no-fault provider. Minn. Stat. § 65B.51, subd. 1 (2000).

Here, we agree with the district court that appellant is, in essence, seeking a double recovery. We recognize that this case varies from the more standard no-fault claim, where the no-fault insurer would have paid the insured for causally related losses and any payment would have been offset against a later jury award, assuming that the appropriate request was made. *Cf. id.* The reverse sequence occurred here—appellant obtained a tort award and then challenged a denial of no-fault benefits, asserting that the insurer's statutory obligation is unaffected by the tort recovery.

We have routinely held that the no-fault act precludes double recoveries regardless of the label. *See, e.g., Simpson v. Ameri-*

*can Family Ins. Co.,* 603 N.W.2d 860, 864 (Minn.App.2000) (under no-fault act, insured cannot recover future economic damages from insurer until exhausting jury award); *LeBeau v. John Deere Ins. Co.,* 574 N.W.2d 83, 85 (Minn.App.1998) (insured must first exhaust the amount of the settlement allocated for expected medical expenses before being entitled to recover any medical expenses from insurer), *review denied* (Minn. Mar. 26, 1998).

■ Appellant urges us to adopt a different result because her jury verdict was obtained in South Dakota. Under her reading of the no-fault act, there cannot be an offset for the jury award because there is no Minnesota judgment. We disagree with appellant that the fact that this is a foreign judgment alters the result under the Minnesota statutory scheme. Our courts should apply the law of Minnesota, not South Dakota, when the claim is between a Minnesota resident and her Minnesota insurer. Appellant alludes that there is a difference between Minnesota and South Dakota insurance laws, but her only citation to South Dakota law is a statute that pertains to medical malpractice, not insurance law. *See* S.D. Codified Laws § 21–3–12 (2000) (discussing admissibility of evidence of special damages insurance from certain collateral sources in personal injury actions for medical malpractice). Moreover, South Dakota, like Minnesota, avoids granting double recoveries. "South Dakota law is explicit and unambiguous in prohibiting a double recovery" in cases involving uninsured-motorist disputes between insurance companies and their insureds. *Nickerson v. American States Ins.,* 616 N.W.2d 468, 472 (S.D.2000) (citation omitted).

Further, the Minnesota no-fault act provides that insureds are entitled to no-fault insurance benefits if they are involved in accidents outside Minnesota. Minn.Stat.

§ 65B.46, subd. 2 (2000). The offset provision simply states that "[w]ith respect to a cause of action in negligence," the court must reduce a jury award by "the value of basic or optional economic loss benefits paid or payable." Minn.Stat. § 65B.51, subd. 1. The provision does not limit the offset to causes of action brought in Minnesota. Reading these two provisions together suggests to us that a foreign verdict should be treated the same as a verdict obtained in Minnesota. *See Kalberg v. Park & Recreation Bd. of Minneapolis,* 563 N.W.2d 275, 278 (Minn.App.1997) (when construing a statute, a court must "look to the statute as a whole and give effect to all of its provisions"). It would be absurd to say that an insured can be overcompensated if a liability verdict is obtained outside the state but not if it is obtained in Minnesota. *State v. Behl,* 564 N.W.2d 560, 570 (Minn.1997) (Keith, C.J., dissenting) ("statutes are to be given a sensible construction that avoids unreasonable, unjust, or absurd results" (citing *Thoresen v. Schmahl,* 222 Minn. 304, 311, 24 N.W.2d 273, 277 (1946))).

■ Finally, appellant argues that, because she agreed to a 33% contingency-fee arrangement with her attorney in the South Dakota action, the jury award does not fully compensate her. This argument is without merit.

## II.

Respondent argues that several defenses—res judicata, collateral estoppel, and accord and satisfaction—serve to bar appellant's claim. The district court did not address these issues. Because we have concluded that the district court did not err in its application of the no-fault statute, we also decline to address the applicability of these defenses.

## DECISION

The district court did not err in holding that payment of no-fault wage-loss benefits under these circumstances would result in a double recovery to appellant and is, therefore, prohibited by the statute.

**Affirmed.**