Leonard OLSON, et al., on behalf of themselves and all others similarly situated, Respondents,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Appellant.

No. CX–01–974.

Court of Appeals of Minnesota.

Dec. 11, 2001.

Karl L. Cambronne, Jeffrey D. Bores, Brian N. Toder, Becky L. Erickson, Chestnut & Cambronne, P.A., Minneapolis; and Robert Espeset, Barry Blomquist, Blomquist & Espeset, Minneapolis; and Mark Reinhardt, Mark A. Wendorf, Harvey H. Eckart, Reinhardt & Anderson, St. Paul, for respondents.

Corey J. Ayling, Kathleen M. Brennan, McGrann Shea Anderson Carnival Straughn & Lamb, Chartered, Minneapolis, for appellant.

Considered and decided by ANDERSON, Presiding Judge, PETERSON, Judge, and MULALLY, Judge.*

## OPINION

### G. BARRY ANDERSON, Judge.

Respondents sued appellant under several common-law and statutory theories, alleging that appellant improperly charged some insureds over the age of 65 for no-fault wage-loss coverage that, by law, the insureds could not receive under most circumstances. Appellant moved to dismiss respondents' claims under several theories, but argued specifically that the district court lacked subject-matter jurisdiction. The district court denied appellant's motion to dismiss for lack of subject-matter jurisdiction.

Appellant challenges the denial of its motion to dismiss, arguing that the district court lacks subject-matter jurisdiction because respondents are allegedly seeking mandatory premium reductions, and these premium reductions are "no-fault benefits," subject to mandatory arbitration under Minn.Stat. § 65B.525, subd. 1 (2000). Appellant argues this construction of § 65B.525, subd. 1, is justified by the plain language of the arbitration provision, effectuates the Minnesota legislature's intent to streamline no-fault dispute resolution, effectuates the No–Fault Act's remedial purpose, and is consistent with Minnesota precedent. We affirm.

## FACTS

On August 24, 2000, the supreme court decided *Am. Family Ins. Group v. Schroedl*, 616 N.W.2d 273 (Minn.2000). The *Schroedl* court interpreted Minn.Stat. § 65B.491 (1998), which states:

Senior Citizens

After August 1, 1987, no plan of reparation security issued to or renewed with a person who has attained the age of 65 years may provide coverage for wage loss reimbursement that the insured will not reasonably be expected to be able to receive. It is the responsibility of the person issuing or renewing the plan to inquire as to the applicability of this section. The rate for any plan for which

---

\* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

coverage has been excluded or reduced pursuant to this section must be reduced accordingly. This section does apply to self-insurance.

The respondent in *Schroedl* was a 72–year–old man who elected to exclude wage-loss coverage from his American Family automobile-insurance policy. *Schroedl,* 616 N.W.2d at 276. The exclusion was effective the day of his automobile accident; that accident resulted in his permanent incapacitation and, ultimately, his death. *Id.* at 276. Despite the policy's wage-loss coverage exclusion, Schroedl sued for wage-loss reimbursement because he was forced to hire others to operate his rental property. *Id.* The supreme court found that Schroedl was entitled to wage-loss reimbursement under § 65B.491, despite the policy exclusion. *Id.* at 282.

The supreme court first noted that the No–Fault Act generally mandates that basic economic-loss benefits, including wage-loss reimbursement, be included in all insurance policies written in this state. *See id.* at 278; *see also* Minn.Stat. §§ 65B.43, subds. 6, 7; 65B.44, subd. 1(b) (2000). But the court also recognized that in some limited circumstances the No–Fault Act prohibited wage-loss coverage for some insureds. *Schroedl,* 616 N.W.2d at 278.

The supreme court found that § 65B.491 "categorically prohibits an insurer from providing coverage for wage loss reimbursement to an insured who is 65 years of age or older" unless the insured will "reasonably be expected to be able to receive 'a benefit' from the coverage." *Id.* at 278 (citation omitted). The court further noted,

> [I]f the insured is reasonably expected to benefit from wage loss reimbursement coverage, whether the insured

wants it or not, the insurer must provide it to comply with the statute.

*Id.* at 278–79. Therefore, the statute mandated all-or-nothing coverage, and an insured did not have the option to choose wage-loss coverage if the insurer decided the insured "will not reasonably be expected to be able to receive" wage-loss reimbursement. Minn.Stat. § 65B.491; *Schroedl,* 616 N.W.2d at 279.

Finally, the *Schroedl* court found that an insurer had a duty to inquire, at every renewal date, whether an insured over the age of 65 was now entitled to wage-loss reimbursement. *Schroedl,* 616 N.W.2d at 280. Because American Family had not asked Schroedl whether he qualified to receive wage-loss reimbursement (for which he apparently would have qualified because of his rental property) at every renewal period, the court found American Family had violated the statute and the court awarded Schroedl wage-loss reimbursement. *Id.* at 282.

The instant case apparently arose out of *Schroedl's* potentially retroactive impact on Minnesota automobile-insurance policies written during the late 1980s and 1990s. On November 16, 2000, respondents served a class-action complaint on appellant. Respondents also filed similar lawsuits against other Minnesota automobile insurers. The lawsuit alleges that appellant improperly charged some Minnesota insureds over the age of 65 for wage-loss coverage, although under Minnesota law, as interpreted by the *Schroedl* court, these insureds were not entitled to wage-loss reimbursement. Essentially, respondents allege appellant charged them for wage-loss coverage that, under *Schroedl,* they could not receive.[1]

---

1. The precise characterization of respondents' "claims" is disputed. Appellant characterizes respondents' claims in several ways:

"premium reductions," "senior citizen discounts," "retroactive premium benefit," and "premium reduction refund." Respondents

On February 14, 2001, appellant generally moved to dismiss respondents' claims but argued separately (from the other defendants in the other cases) that the district court lacked subject-matter jurisdiction. On April 20, 2001, the district court denied appellant's motion to dismiss for lack of subject-matter jurisdiction. This appeal followed.

## ISSUE

Whether respondents' claims for improperly charged or overpaid wage-loss coverage premiums must be arbitrated under Minn.Stat. § 65B.525, subd. 1?

## ANALYSIS

■■■ The existence of subject-matter jurisdiction is a question of law, which we review de novo. *Neighborhood Sch. Coalition v. Indep. Sch. Dist. No. 279*, 484 N.W.2d 440, 441 (Minn.App.1992), *review denied* (Minn. June 30, 1992). Here, subject-matter jurisdiction depends on the construction of Minnesota's No–Fault Act. Statutory construction is a question of law, which we also review de novo. *Nelson v. Am. Family Ins. Group*, 632 N.W.2d 264, 266 (Minn.App.2001); *see also Brookfield Trade Ctr., Inc. v. County of Ramsey*, 584 N.W.2d 390, 393 (Minn.1998).

■ The legislature provides rules of statutory construction to guide this court in its interpretive task. The intent of the legislature must govern our inquiry, but "[w]ords and phrases [should be] construed according to rules of grammar and according to their common and approved usage." Minn.Stat. § 645.08 (2000).

characterize their claims as "required premium reductions," "premium reimbursements," "illegally collected premiums," and "illegally charged premiums." For purposes of the arbitration provision's jurisdictional amount, the supreme court and this court have broadly defined the word "claim." *See Brown v.*

Moreover, "[g]eneral words are construed to be restricted in their meaning by preceding particular words." *Id.*

When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit. Minn.Stat. § 645.16 (2000); *see also Pususta v. State Farm Ins. Cos.*, 632 N.W.2d 549, 552 (Minn.2001); *Nelson*, 632 N.W.2d at 266 ("[A] statute should be interpreted * * * to give effect to all of its provisions; 'no word, phrase, or sentence should be deemed superfluous, void, or insignificant.'" (quotation omitted)). Under these rules of construction, it is clear that we must first examine "whether the statute's language * * * is clear or ambiguous. A statute is only ambiguous when the language therein is subject to more than one reasonable interpretation." *Schroedl*, 616 N.W.2d at 277 (citations and quotation omitted).

■ Appellant argues that the plain meaning of "no-fault benefits" in § 65B.525, subd. 1, includes a statutory entitlement to premium reductions. Appellant points out that the *American Heritage Dictionary* (2000) defines "benefit" as "an entitlement available in accordance with an insurance policy." Because the word "benefit" must be afforded its "common and approved usage" of "an entitlement available in accordance with an insurance policy," appellant argues respondents' claims must be arbitrated.

The No–Fault Act requires mandatory arbitration of certain no-fault insurance claims:

*Allstate Ins. Co.*, 481 N.W.2d 17, 19 (Minn. 1992) ("[T]he term 'claim' as used in [§] 65B.525, subd. 1, is simply referring to the amount that the claimant is asking for."); *Hippe v. Am. Family Ins. Co.*, 565 N.W.2d 439, 442 (Minn.App.1997).

Except as otherwise provided in section 72A.327, the supreme court and the several courts of general trial jurisdiction of this state shall by rules of court or other constitutionally allowable device, provide for the mandatory submission to binding arbitration of all cases at issue where the claim at the commencement of arbitration is in an amount of $10,000 or less against any insured's reparation obligor for *no-fault benefits* or comprehensive or collision damage coverage.

Minn.Stat. § 65B.525, subd. 1 (emphasis added). The district court, in its memorandum denying appellant's motion to dismiss for failure of subject-matter jurisdiction, explained,

In this case Plaintiffs are not seeking no-fault benefits, or comprehensive or collision damage coverage. Plaintiffs do not allege that any collision has taken place. The damages Plaintiffs seek are for premiums paid to Defendants in violation of Minn.Stat. § 65[B].491. Such damages are not of the type for which arbitration is mandatory under the provisions of the No–Fault [A]ct.

We conclude appellant's interpretation of the statute does not afford the statutory language its common and approved usage and therefore is not reasonable. We therefore find that respondents' claims, whatever the precise characterization of those claims may be, need not be arbitrated under § 65B.525, subd. 1.

Examining the arbitration provision, and affording the term "no-fault benefits" its common and approved usage, leads inevitably to the conclusion that appellant's strained interpretation fails. The dictionary definition of "benefit," which refers to a payment made as part of an insurance policy, cannot be read in isolation without examining other descriptions of the word "benefit" that contemplate an affirmative, compensatory understanding of the word. Moreover, in its reply brief, appellant admits that although "it is true that a premium reduction in lieu of wage loss benefits would be an *unusual* and *unique* kind of no-fault 'benefit,'" the fact "[t]hat a benefit is *unusual* does not prevent it from becoming considered a benefit." (emphases added). These are tacit admissions of the problems with appellant's common-and-approved-usage argument.

In addition, the arbitration provision itself suggests the common and approved usage of the term "no-fault benefits." Under the arbitration provision, respondents have asserted a claim against an "insured's reparation obligor"; however, "no-fault benefits" is immediately followed by "or comprehensive or collision damage coverage." Reading "no-fault benefits" not in isolation, but with the terms immediately preceding and following it, suggests that the term "no-fault benefits" represents compensatory benefit payments made by an insurer pursuant to an insured's insurance policy. *See* Minn.Stat. § 645.08(3) ("General words are construed to be restricted in their meaning by preceding particular words[.]").

Appellant also suggests that another No–Fault Act provision, which requires payment of basic economic-loss benefits, sheds some light on how the term "no-fault benefits" should be interpreted in the arbitration provision. In particular, appellant argues that a claim for improperly charged or overpaid wage-loss coverage premiums is "at least an 'applicable deductible[ ], exclusion[ ], disqualification[ ], [or] other condition.'"

Basic economic loss benefits shall provide reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle, subject to any applicable deductibles, exclusions, disqualifications, and other conditions,

and shall provide a minimum of $40,000 for loss arising out of the injury of any one person * * *.

Minn.Stat. § 65B.44, subd. 1 (2000).

The district court did not address this argument in its order, but appellant's interpretation of the statutory language is simply not reasonable. First, the provision reads: "Basic economic loss benefits shall provide reimbursement for all loss suffered through injury arising out of the maintenance or use of a motor vehicle * * *." *Id.* The clause in no way suggests that "benefits" should be read to encompass a claim for improperly charged or overpaid premiums.[2] *See Pususta,* 632 N.W.2d at 552 ("The No–Fault Act provides that an injured person * * * is entitled to medical expense reimbursement 'for all loss suffered through injury *arising out of* the maintenance or use of a motor vehicle * * *.'" (second ellipsis in original) (quotation omitted)); *AMCO Ins. Co. v. Ashwood–Ames,* 534 N.W.2d 740, 741 (Minn.App.1995), *review denied* (Minn. Sept. 28, 1995); Michael K. Steenson; *Minnesota No–Fault Automobile Insurance* 79 (2d ed. 1989) ("In order for benefits to be payable, the injured person must incur loss because of 'inability to work' that is 'proximately caused' by a nonfatal injury arising out of the maintenance or use of a motor vehicle.").

Second, appellant's argument that "[t]he requirement of a premium reduction is at least an 'applicable deductible[ ], exclusion[ ], disqualification[ ], [or] other condition[ ]'" interprets that clause in isolation, and, therefore, is not reasonable. The language "subject to any applicable deductibles, exclusions, disqualifications, and other conditions" qualifies the preceding clause and restricts the amount of basic economic-loss reimbursement that must be paid to reimburse injury.

We therefore conclude that the plain language of the arbitration provision and the common and approved usage of the term "no-fault benefits" suggest respondents' claims for improperly charged or overpaid premiums need not be arbitrated. To mandate arbitration of respondents' claims would do violence to the plain language of the arbitration provision. *Cf. Pususta,* 632 N.W.2d at 555 ("To hold the insurer liable for medical expenses resulting from a nonautomobile accident conflicts with the statutory language limiting the definition of loss to injuries 'arising out of the maintenance or use of a motor vehicle * * *.'" (ellipsis in original) (citation omitted)).

Appellant argues that if we look past the plain language of the arbitration provision, respondents' claims should be subject to mandatory arbitration because that interpretation would best effectuate the legislature's intent when it adopted the No–Fault Act's arbitration provision. We note that appellant has thoroughly briefed the court on the history and purposes of the No–Fault Act. But because we conclude that the plain language of the arbitration provision and the common and approved usage of "no-fault benefits" does not contemplate

---

2. Several no-fault provisions in § 65B.44 also suggest "benefits" are compensatory payments made as part of an insured's contract with an insurer: Medical-expense "benefits" (subd. 2); Disability and income-loss "benefits" (subd. 3); Funeral and burial "benefits" (subd. 4); Replacement service-loss "benefits" (subd. 5); Survivor's economic-loss "benefits" (subd. 6); Survivors replacement-services-loss "benefits" (subd. 7). In addition, the No–Fault Act requires that "no insurance policy providing *benefits* for injuries arising out of the maintenance or use of a motor vehicle shall be issued" unless basic economic-loss benefits are provided. Minn. Stat. § 65B.49, subd. 1 (2000) (emphasis added).

mandatory arbitration of respondents' claims, we decline to go further and examine legislative intent and the purposes of the No–Fault Act.[3]

"The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16. The legislature, however, has made it clear that legislative intent and the spirit of the law, if any such intent or spirit can be ascertained, cannot override the plain language of a statute. *Id.*[4]

Moreover, because we conclude that respondents' claims need not be arbitrated under the plain language of the arbitration provision, we decline to address appellant's alternative arguments that do not address the district court's subject-matter jurisdiction and are not properly before this court.

## DECISION

Respondents' claims for improperly charged or overpaid wage-loss coverage premiums are not claims for "no-fault benefits" for purposes of Minn.Stat. § 65B.525, subd. 1; therefore, they need

not first be arbitrated, and respondents may proceed in the district court.

**Affirmed.**

---

3. We also recognize, however, that the legislature could have specifically provided for mandatory arbitration of claims such as respondents' when it enacted the senior-citizen provision in 1987. It did not do so. *See* Minn.Stat. §§ 65B.491; 65B.525, subd. 1.

4. Appellant has not specifically cited any legislative history or contemporary commentary that clearly suggests claims such as respondents' must be arbitrated. In addition, the committee statements appellant relies on may suggest that "no-fault benefits" should be interpreted as set forth above. State Senator Luther commented:

> Now the small person, the person with the small amount of *damages or injuries*, if the insurance company would like, they can actually force that person to go through a court proceeding, when they're getting what's supposed to be a very expeditious

process—*no fault benefits*. No small person ought to have to go through that kind of process. And what this amendment would do is to make no-fault do what it was intended to do: a fast, speedy remedy without a lot of lawyers and a lot of court proceedings.

*Hearing on S.F. 314 & H.F. 345 Before the Senate Econ. Dev. and Commerce Comm.* (Apr. 16, 1985) (statement of Sen. Luther) (emphasis added).

These comments suggest that at least one member of the Senate Economic Development and Commerce Committee had a general understanding of what types of claims would be submitted to mandatory arbitration: claims for damages or injuries, which at least Senator Luther equated with claims for "no-fault benefits."