ILLINOIS FARMERS INSURANCE
COMPANY, et al.,
Respondents,

v.

GLASS SERVICE COMPANY,
INC., et al., Appellants.

No. A03–109.

Court of Appeals of Minnesota.

Sept. 30, 2003.

Eric J. Magnuson, John M. Bjorkman, Paula Duggan Vraa, Rider Bennett, LLP, Minneapolis, MN, for respondents Illinois Farmers Insurance Company and Mid–Century Insurance Company.

Charles J. Lloyd, Matthew P. Lewis, Livgard & Rabuse, P.L.L.P., Minneapolis, MN, for appellants Glass Service Company, Inc. and Auto Glass Service Center, Inc.

Considered and decided by RANDALL, Presiding Judge; KALITOWSKI, Judge; and HUDSON, Judge.

## OPINION

HUDSON, Judge.

This is an appeal from summary judgment in a dispute as to the amount that insurers must pay for automobile glass repair and replacement services performed on behalf of the insureds. The companies that performed these repairs challenge the district court determination that they were required to arbitrate the claims and that each claim must be separately arbitrated. The insurers contend in a notice of review that the district court erred in requiring that these individual arbitrations take place before the same panel of three arbitrators. We affirm the decision that the auto glass companies are required to arbitrate these claims and must arbitrate each claim separately. We reverse the decision that the same panel of three arbitrators must adjudicate all of the claims.

## FACTS

The insurers, respondents Illinois Farmers Insurance Company and Mid Century Insurance Company, issue automobile insurance policies in Minnesota. The auto glass companies, appellants Glass Service Company, Inc., and its wholly owned subsidiary Auto Glass Service Center, Inc., are engaged in the business of automobile glass repair and replacement. The insureds had policies with the insurers under which the latter covered repair or replacement of damaged automobile glass. All of the policies also contained a mandatory arbitration clause.

The auto glass companies performed automobile glass repair and replacement services for many of the insurers' policyholders. Rather than obtaining payment directly from their customers, who would then be required to submit the claims to their insurers, the auto glass companies submitted their customers' bills directly to their insurers.[1]

---

1. Some customers explicitly assigned their claims against their insurers to the auto glass

Pricing in the auto glass replacement business is based primarily on three components: glass, adhesives, and labor.[2] Both the insurers and the auto glass companies agree that pricing for these components is based on a national price-list publication known as the National Auto Glass Specifications (NAGS). NAGS provides a price by part number for each glass part; a price per tube of adhesive; and either a flat or an hourly rate for labor.

Although the auto glass companies and the insurers base their calculations on these undisputed figures, they use different formulas to arrive at the amount that they respectively bill and pay. The insurers' formula results in a lower amount than the auto glass companies' formula. Thus, the insurers routinely paid less than the full amount billed by the glass companies. The glass companies, however, rarely, if ever, disputed the individual payments because the discrepancy on any one claim seldom exceeded $500, and could sometimes be as little as $1. It appears from the record that this billing/payment practice between the parties continued for several years.

As a result of these "short" payments from the insurers (i.e., payments for less than the amount billed), the auto glass companies served a demand for arbitration of the claims, which now number more than 5,700 and amount collectively to more than $1 million. The insurers responded by bringing a declaratory judgment action, asserting that any claimed assignment did not include the right to arbitrate or, alternatively, that any right to arbitrate did not include the right to arbitrate the individual claims collectively. The auto glass companies then withdrew their demand for arbi-

tration and asserted a counterclaim for money damages on a breach-of-contract claim. The insurers moved for summary judgment and a declaration that the auto glass companies were required to separately arbitrate each of the assigned claims and for dismissal of the counterclaim. The district court granted summary judgment requiring individual arbitration of the claims, although it authorized the same panel of three arbitrators to determine all of the individual claims. The remaining claims were dismissed without prejudice. The auto glass companies appealed and the insurers filed a notice of review.

## ISSUES

I. Did the district court err in holding that the auto glass companies are required to arbitrate the claims?

II. Did the district court err in ordering separate arbitrations for each claim?

III. Did the district court err in requiring that the separate arbitrations take place before the same panel of three arbitrators?

## ANALYSIS

■ "Application of the law to a particular set of facts is a question of law, which we review *de novo.*" *Regenscheid v. Farm Bureau Mut. Ins. Co.,* 652 N.W.2d 261, 263 (Minn.2002). The district court's determination of the scope of an arbitration agreement is reviewed de novo. *State Farm Mut. Auto. Ins. Co. v. Cincinnati Ins. Co.,* 666 N.W.2d 334, 336 (Minn.2003).

### I

■ We first address whether the auto glass companies are required to arbitrate

companies, while others did not. Although the insurers discuss the assignments, they do not explicitly challenge their validity in this appeal.

2. There is little dispute as to pricing on the fourth component, which consists of miscellaneous parts such as moldings and clips.

their dispute with the insurers. It is undisputed that all of the policies provide, in relevant part, for mandatory arbitration for claims of $5,000 or less. Second, under the No–Fault Act, arbitration is mandatory for claims in the amount of $10,000 or less for comprehensive or collision damage coverage. Minn.Stat. § 65B.525, subd. 1 (2002);[3] Minn. R. No–Fault Arb. 6. "Whether a party has agreed to arbitrate a particular dispute is a matter of contract interpretation, which we review de novo." *Ottman v. Fadden,* 575 N.W.2d 593, 595 (Minn:App.1998). Nonetheless, "[a] party can only be required to arbitrate disputes that it contractually agreed to submit to arbitration." *Id.*

The auto glass companies make several arguments in support of their position that the claims are not arbitrable. They first contend that the mandatory arbitration provision does not apply to them as assignees of the insureds because they were only assigned the "proceeds" of the various policies, not the rights. Accordingly, the auto glass companies claim the assignments gave them standing to bring an action against the insurers to collect proceeds without being bound by the mandatory arbitration provisions. We disagree.

**1. Assignment**

■ "An assignment is a contract between the assignor and assignee." 6A C.J.S. *Assignments* § 4 (1975). "A valid assignment generally operates to vest in the assignee the same right, title, or interest that the assignor had in the thing assigned." *State ex rel. Southwell v. Chamberland,* 361 N.W.2d 814, 818 (Minn. 1985). Further, the assignee takes the assigned chose subject to all the equities and defenses existing between the assignor

and the debtors. 6A C.J.S. *Assignments* § 99. "[W]here rights are assignable, the various remedies appropriate to their protection and enforcement are open to the assignee." *Id.* § 105 (footnote omitted). "A debtor, who has not estopped himself with respect thereto, may generally assert against the assignee all equities or defenses existing or acquired against the assignor prior to the time that the debtor received notice of the assignment." *Id.* § 115 (footnote omitted).

■ We note first that each of the individual policyholders would be contractually and statutorily obligated to arbitrate their individual claims. It is black-letter law that an assignee of a claim takes no other or greater rights than the original assignor and cannot be in a better position than the assignor. *Geldert v. Am. Nat'l Bank,* 506 N.W.2d 22, 28–29 (Minn.App.1993), *review denied* (Minn. Nov. 16, 1993). Thus, as assignees, the auto glass companies stand in the shoes of the individual policyholders. Therefore, as the district court correctly determined, the auto glass companies have no greater rights than the policyholders and are obligated to arbitrate their claims. Moreover, the assignments, by their express terms, are all assignments of "any and all claims," not assignments of proceeds.

In support of their position, however, the auto glass companies cite *Reitzner v. State Farm Fire & Cas. Co.,* 510 N.W.2d 20 (Minn.App.1993). In *Reitzner,* this court addressed the claim that an assignment violated the prohibition against assigning an insurance policy without the consent of the insurer and was therefore void. *Id.* at 26. This court stated that the assignment was not an assignment of the

---

**3.** The fact that the maximum amount of a claim subject to arbitration differs under the

policy and state law is not at issue here.

policy, but rather "an assignment of the proceeds due under the policy should the claim be successful." *Id. Reitzner* did not, however, address the issue of whether the assignee can be compelled to arbitrate under the provisions of the insurance policy.

Similarly, the auto glass companies cite *In re Estate of Sangren,* 504 N.W.2d 786 (Minn.App.1993), *review denied* (Minn. Oct. 28, 1993), in support of their argument that only the proceeds, and not the rights under the policy, were assigned. There, this court was again addressing the effect of a clause in the policy prohibiting assignment without consent. *Id.* at 790. This court held that the insurers' failure to assert an objection constitutes a waiver of that right. *Id.* In that context, this court noted, "[f]urther, this was not really an assignment of the policy. Rather, it was an assignment of the *proceeds* of the policy. A claim for proceeds is more a debt, subject to the ordinary rules of assignment, than a contract right to insurance protection." *Id.* Like *Reitzner,* the *Sangren* court did not address the issue of whether an assignee is bound by arbitration provisions in the policy. Further, *Sangren* specifically held that "[a]n assignee acquires all rights and duties vested in the assignor by virtue of the assignment." *Id.* Thus, *Sangren* confirms that an assignment of insurance proceeds is subject to the usual rules of assignment. Accordingly, we conclude that the auto glass companies, as assignees of the insureds, are subject to the mandatory arbitration provision pursuant to the terms of the policies and the No–Fault Act.

### 2. Waiver

 Next, the auto glass companies contend that the insurers waived any right to arbitration by filing the lawsuit. We first address whether waiver is applicable to the No–Fault Act's mandatory arbitra-

tion requirements. Whether an issue must be arbitrated raises an issue of subject matter jurisdiction, which is a question of law reviewed de novo. *Olson v. Am. Fam. Mut. Ins. Co.,* 636 N.W.2d 598, 601 (Minn.App.2001). The No–Fault Act requires mandatory arbitration of certain no-fault insurance claims for comprehensive or collision-damage coverage. *Id.* at 601–02; Minn.Stat. § 65B.525, subd. 1 (2002); Minn. R. No Fault Arb. 6. It is well established that subject matter jurisdiction may not be waived. *Marzitelli v. City of Little Canada,* 582 N.W.2d 904, 907 (Minn.1998). Thus, irrespective of what the insurers did or did not do concerning the arbitrability of this dispute, because arbitration is mandatory under the No–Fault Act and cannot be waived, this claim fails.

### 3. Judicial estoppel

 The auto glass companies also argue that the insurers are estopped by their own actions from demanding arbitration under the theory of judicial estoppel.

 Judicial estoppel prevents a party from contradicting previous declarations made during the same or later proceedings, if the change in position would adversely affect the proceeding or constitute a fraud on the court. *Bauer v. Blackduck Ambulance Ass'n,* 614 N.W.2d 747, 749 (Minn.App.2000). Here, in response to the auto glass companies' original demand to arbitrate the dispute, the insurers commenced a declaratory judgment action seeking to block the arbitration or, alternatively, to block collective arbitration of the individual claims. In their subsequent summary judgment motion, however, the insurers changed their position and argued that the auto glass companies are required to arbitrate this dispute pursuant to the terms of the policies.

We note that both parties have "adjusted" their positions on arbitrability as the

ever-changing procedural posture of this case dictated. In any event, Minnesota courts have declined to expressly recognize the theory of judicial estoppel. *State v. Profit*, 591 N.W.2d 451, 462 (Minn.1999) (addressing claim in criminal trial that state was judicially estopped from claiming evidence was irrelevant). We decline to recognize it here.

### 4. Statutory maximum under the No–Fault Act

■ Finally, the auto glass companies argue that their claims are not subject to mandatory arbitration because the dispute involves an amount in excess of $1 million, which far exceeds the statutory maximum of $10,000 for arbitrable claims. *See* Minn. Stat. § 65B.525, subd. 1 (2002); Minn. R. No–Fault Arb. 6 (providing that claim subject to no-fault arbitration must be $10,000 or less). It is undisputed that most of the individual claims are less than $1,200, and, if considered individually, would be subject to mandatory arbitration. If consolidated, however, the claims are in excess of $1 million. The district court ruled that because the auto glass companies stand in the shoes of the assignors, giving the auto glass companies the same rights as each assignor individually, each claim must be separately arbitrated pursuant to the terms of the individual policies.

The auto glass companies, however, argue that the supreme court has defined the term "claim" in the mandatory arbitration statute as "the amount that the *claimant* is asking for." *Brown v. Allstate Ins. Co.*, 481 N.W.2d 17, 19 (Minn.1992) (emphasis added). They contend that, here, they are the claimants and they seek a total amount that exceeds $1 million. Further, they assert that the individual components of a claim may not be split and that they may not bring successive lawsuits involving the same set of facts. *See Hauser v. Mealey*, 263 N.W.2d 803, 807 (Minn.1978) (addressing the doctrine of merger and bar). Otherwise, they assert that a multiplicity of lawsuits and wasteful litigation would result.

We recognize that the claims arise from similar incidents involving windshields in need of repair or replacement, and in each instance the auto glass companies performed the needed service. Likewise, we recognize the obvious economies of scale realized by consolidating these claims, especially given their common genesis in the proper application of the NAGS pricing formula. But we cannot ignore the fact that ultimately, these are disputes between individual policyholders and their respective insurance companies. The fact that the claims were all assigned to the same auto glass companies does not transform them into a single claim for purposes of determining whether the claims exceeded the maximum amount for mandatory arbitration. We cannot change the jurisdictional mandates of the statute. Accordingly, we conclude that the district court properly determined that each claim must be addressed separately for purposes of determining whether the claim exceeds the statutory maximum of $10,000 of the No–Fault Act.

## II

Next, we address the auto glass companies' challenge to the district court order that the claims must be individually arbitrated.

■ The auto glass companies first assert that, if the district court lacked subject matter jurisdiction over the dispute because it concluded arbitration was mandatory, then it likewise lacks jurisdiction to direct how the arbitration should be conducted. But addressing the scope of a claim to determine whether it is subject to arbitration is a question of law reviewable

by the appellate court. *See Brown,* 481 N.W.2d at 18–19 (addressing whether claimant may reduce portion of claim to obtain arbitration). Consequently, the district court properly ruled on the issue.

■ Next, the auto glass companies argue that whether the individual claims can be arbitrated collectively or must be arbitrated separately is a question of arbitrability, which the arbitrators must decide. *See City of Brooklyn Center v. Minn. Teamsters Pub. & Law Enforcement Employees Union,* 271 N.W.2d 315, 318 (Minn.1978) (holding arbitrator decides issues if parties clearly intend to arbitrate provision or if arbitrability is reasonably debatable; if provision not arbitrable, court may protect party from being compelled to arbitrate). But here, as in *Brown,* the district court was asked to decide an issue of law as to the nature of the claim. *See* 481 N.W.2d at 19. Consequently, the district court properly resolved the issue.

■ Finally, the auto glass companies argue that even if the district court had jurisdiction to order some 5,700 separate proceedings, its decision to do so was plain error. They argue that arbitration is supposed to be an efficient and inexpensive mechanism by which disputes are resolved, and the proceeding that the district court ordered was neither. They note that the arbitration agreements in the policies do not prohibit consolidated proceedings, and they contend that the state encourages consolidation of judicial proceedings whenever appropriate. *Grover–Dimond Assoc. v. Am. Arbitration Assoc.,* 297 Minn. 324, 329–30, 211 N.W.2d 787, 790 (Minn.1973). Appellant's heavy reliance on *Grover–Dimond,* however, is unwarranted because *Grover–Dimond* was decided before the Eighth Circuit decision in *Baesler v. Cont'l Grain Co.,* 900 F.2d 1193, 1195 (8th Cir.1990), which unequivo-cally held that, under the Federal Arbitration Act ("FAA"), a district court is without power to consolidate arbitration proceedings absent express language in an arbitration agreement authorizing consolidation of arbitration. *Id.* Of course, here, the arbitration agreements are governed by Minnesota's Uniform Arbitration Act ("MUAA") and not the FAA; but the two statutes are consistent. *See* Minn. Stat. § 572.08 (2000); 9 U.S.C. § 2 (2000); *Alexander v. Minn. Vikings Football Club LLC,* 649 N.W.2d 464, 466 (Minn.Ct.App. 2002), *review denied* (Minn. Oct. 29, 2002).

■ The auto glass companies present a compelling case for consolidation because of the unique, formulaic fashion by which auto glass claims are handled within the auto glass replacement industry. But neither the policies nor the No–Fault Act provide for consolidated arbitration of individual claims. *Baesler,* 900 F.2d at 1195. Thus, while we recognize that judicial economy is sacrificed by not consolidating these claims, we have no authority to write exceptions into the mandatory arbitration provisions of the No–Fault Act or consolidate arbitration proceedings absent express language in the policies' arbitration provisions authorizing us to do so. If the legislature wishes to amend the act or if the supreme court wishes to amend the rules to specifically provide for consolidation, either may do so.

### III

■ Finally, the insurers challenge, by notice of review, the district court determination that for purposes of judicial economy and the orderly and efficient administration of justice, each individual claim must be adjudicated individually before the same three arbitrators chosen under the insurance policy. The insurers contend that this ruling is erroneous because use of the same panel of arbitrators is contrary

to the express terms of the policies and inconsistent with the supreme court's arbitration rules under the No–Fault Act. We agree. Under the arbitration clauses, for each individual claim, the parties to that claim are entitled to select an arbitrator, and the two arbitrators selected are required to select the third arbitrator. Thus, the rules for selecting an arbitrator do not provide for the same set of arbitrators to consider each of the individual claims. *See* Minn. R. No–Fault Arb. 8. Consequently, the district court erred in adopting a procedure under which the same set of arbitrators would consider each individual claim.

In summary, we recognize that arbitration is meant to be an efficient and relatively inexpensive way of resolving disputes. Unfortunately, these proceedings will be neither, because the resolution of this appeal leads to a cumbersome procedure. But this appears to be a case which the parties should be able to settle, and we strongly urge them to do so.

### DECISION

We affirm the district courts decision that the claims must be arbitrated individually pursuant to the mandatory arbitration provisions of Minn.Stat. 65B.525, subd. 1 (2002), and the respective policies. We reverse the district courts decision that the same panel of three arbitrators must adjudicate each individual claim.

**Affirmed in part, reversed in part.**