TRAVERTINE CORPORATION,
Respondent,

v.

LEXINGTON–SILVERWOOD, a
Minnesota Limited Partnership,
Appellant.

No. A03–210.

Court of Appeals of Minnesota.

Oct. 22, 2003.

Timothy R. Duncan, Donald R. McNeil, Steven R. Little, Coleman, Hull & Van Vliet, PLLP, Minneapolis, MN, for respondent.

Curtis D. Smith, Jerrie M. Hayes, Moss & Barnett, P.A., Minneapolis, MN, for appellant.

Considered and decided by WILLIS, Presiding Judge; TOUSSAINT, Chief Judge; and SHUMAKER, Judge.

## OPINION

WILLIS, Judge.

Appellant challenges the district court's order granting respondent's motion to stay arbitration. Because we conclude that appellant received a valid assignment of the compensation due from respondent and that the assignment allows appellant to compel arbitration, we reverse.

## FACTS

The underlying dispute in this case concerns the claim of appellant Lexington–Silverwood, L.P. that it was assigned the compensation that James E. Lennon was due under a "management agreement" to which Lennon, George Berkey, and respondent Travertine Corporation, a real-estate development venture, were parties.

In August 1989, Travertine entered into the management agreement with Lennon and Berkey. The agreement provides that Lennon and Berkey would serve as the board of directors and officers of Travertine and would "provide all of the management services necessary to undertake the land acquisition, assembly and disposition" described in Travertine's business plan. In return for their services, Travertine agreed to pay Lennon and Berkey a percentage of its net profits.

The management agreement provides that if Travertine terminates the agreement, Lennon and Berkey would be entitled to compensation for their services up to the termination date. Disputes under the agreement are subject to an arbitration clause, which provides that

> [i]n the event of a dispute between the parties with reference to the interpretation of this agreement or their rights hereunder, the same shall be submitted to arbitration.

And the agreement further provides that it is

> binding on the parties and their respective personal representatives, successors and assigns; provided, however, that the rights and obligations of Berkey/Lennon shall not be assignable except that Berkey may assign to Lennon or Lennon assign to Berkey such rights and obligations.

In February 1992, Berkey assigned all of his rights under the management agreement to Lennon. In May 1996, Lexington–Silverwood obtained a judgment against Lennon in a matter unrelated to Travertine. In settlement of the judgment, Lennon purported to assign to Lexington–Silverwood his rights under the management agreement with Travertine. The assignment agreement provided that Lexington–Silverwood "has an equitable assignment of Lennon's stock in Travertine" and that "Lennon agrees to transfer all other compensation, including anything due Lennon from his management agreement with Travertine."

Travertine cancelled the management agreement in early 2000. Lexington–Silverwood filed a demand for arbitration in March 2002, alleging that, as Lennon's assignee, it was entitled to the compensation due him under the management agreement and that Travertine had refused to pay it. Travertine moved the district court for an order staying arbitration. The district court determined that Lennon's transfer of his right to compensation was not a valid present assignment, concluding that even if the assignment were enforceable, it was only an assignment of Lennon's right to receive compensation and not his right to demand arbitration. The court granted Travertine's motion to stay arbitration, and this appeal follows.

## ISSUES

I. Did the district court err by concluding that the assignment to appellant is invalid?

II. Did the district court err by concluding that even if the assignment to appellant were valid, appellant was not entitled to compel arbitration?

## ANALYSIS

### I.

 Lexington–Silverwood first argues that it received a valid assignment of

Lennon's right to receive compensation under the management agreement. No "particular form of words is required for an assignment, but the assignor must manifest an intent to transfer and must not retain any control or any power of revocation." *Minn. Mut. Life Ins. Co. v. Anderson,* 504 N.W.2d 284, 286 (Minn.App. 1993), *review denied* (Minn. Oct. 19, 1993). An effective assignment requires the manifestation of intent to make a present transfer of a right without further action by the parties to the assignment agreement. *Id.*

█ While the assignment agreement here provides Lexington–Silverwood with an "equitable assignment" of Lennon's Travertine stock, Lennon also agreed to "transfer all other compensation ... due Lennon from his management agreement with Travertine." The assignment agreement requires no further action by the parties with respect to Lennon's compensation, and Lennon retained no control over the compensation and no power of revocation. Travertine contends that Lennon could not assign his right to compensation because, at the time of his agreement with Lexington–Silverwood, he had not yet performed under the management agreement and therefore had no right to receive compensation. But the agreement between Lennon and Lexington–Silverwood is a valid present assignment of Lennon's future rights. *See Mut. Ben. Life Ins. Co. v. Canby Inv. Co.,* 190 Minn. 144, 151, 251 N.W. 129, 133 (1933) (noting that "[c]ontingent interests, expectancies, and things resting in mere possibility only are assignable").

█ Travertine argues that, even if Lennon made a present assignment of his future right to receive compensation, the management agreement's non-assignment clause renders the assignment unenforceable. Contract interpretation is a legal issue, which we review de novo. *Blackburn,*

*Nickels & Smith, Inc. v. Erickson,* 366 N.W.2d 640, 643 (Minn.App.1985), *review denied* (Minn. June 24, 1985).

Minnesota caselaw on the validity of assignments of compensation is limited. In *Wilkie v. Becker,* the supreme court stated that the right to receive payment may be assigned "unless there is something in the terms of the contract manifesting the intention of the parties that it shall not be assigned." 268 Minn. 262, 267, 128 N.W.2d 704, 707 (1964) (quoting 6 Am.Jur. 2d *Assignments* § 16); *see also In re Jones,* 337 F.Supp. 620, 625 n. 14 (D.Minn. 1971) (citing *Wilkie* for the proposition that "it is possible under Minnesota law to assign the proceeds of a contract even if the contract itself is not assignable"). Here, the contract provides that "rights and obligations ... shall not be assignable," but there is no language specifically addressing the assignment of the right to receive payment.

█ Under the common-law presumption in favor of free alienability of contractual rights and obligations, an assignment of compensation under a contract is enforceable notwithstanding a non-assignment clause. For example, the Restatement (Second) of Contracts provides that

[a] contract term prohibiting assignment of rights under the contract, unless a different intention is manifested,

(a) does not forbid assignment of ... a right arising out of the assignor's due performance of his entire obligation; [and]

(b) gives the obligor a right to damages for breach of the terms forbidding assignment but does not render the assignment ineffective.

Restatement (Second) of Contracts § 322(2) (1981).

█ Applying Missouri law, the Eighth Circuit adopted the Restatement in *Cedar Point Apartments, Ltd. v. Cedar Point Inv. Corp.,* 693 F.2d 748 (8th Cir.1982).

The court held that a non-assignment clause that does not explicitly prohibit the "power" to assign or render void an assignment made in violation of the clause does not make the assignment unenforceable by the assignee. *See id.* at 754. Rather, the assignment, if otherwise valid, is enforceable, and the obligor may seek damages from the assignor for breach of the non-assignment clause. *Id.* Numerous other jurisdictions have adopted the Restatement's rule. *See, e.g., Bel–Ray Co., Inc. v. Chemrite (Pty) Ltd.,* 181 F.3d 435, 442 (3d Cir.1999); *Pro Cardiaco Pronto Socorro Cardiologica S.A. v. Trussell,* 863 F.Supp. 135, 137 (S.D.N.Y.1994); *Lomas Mortgage U.S.A., Inc. v. W.E. O'Neil Constr. Co.,* 812 F.Supp. 841, 844 (N.D.Ill. 1993); *Owen v. CNA Ins./Cont'l Cas. Co.,* 167 N.J. 450, 771 A.2d 1208, 1218 (2001); *Rumbin v. Utica Mut. Ins. Co.,* 254 Conn. 259, 757 A.2d 526, 531–33 (2000); *Macklowe v. 42nd St. Dev. Corp.,* 170 A.D.2d 388, 566 N.Y.S.2d 606, 606–07 (1991).

Here, the management agreement does not explicitly limit Lennon's power to assign, nor does it explicitly render assignments void. Further, the contract provides that it "shall be binding on the parties and their respective ... assigns." This language supports an inference that the non-assignment clause, if it was intended to apply to the assignment of compensation, gives Travertine a right to damages for breach of the clause but does not render Lennon's assignment ineffective. *See Cedar Point Apartments,* 693 F.2d at 754 (citing clause that binds assignee in holding that non-assignment clause does not preclude power to assign). We conclude, therefore, that the non-assignment clause does not render void Lennon's assignment of compensation to Lexington–Silverwood.

## II.

Having determined that Lexington–Silverwood received a valid assignment of Lennon's right to receive compensation, we next consider whether Lexington–Silverwood may compel arbitration to enforce the payment of the compensation due under the management agreement. Arbitration is favored as a speedy, informal, and relatively inexpensive method for resolving controversies, *Lickteig v. Alderson, Ondov, Leonard & Sween, P.A.,* 556 N.W.2d 557, 562 (Minn. 1996), but the district court "may stay an arbitration proceeding commenced or threatened on a showing that there is no agreement to arbitrate," Minn.Stat. § 572.09(b) (2002).

When evaluating the issue of arbitrability on a motion to stay arbitration, courts ascertain the intent of the parties from the language of the arbitration agreement. *Minn. Fed'n of Teachers, Local 331 v. Indep. Sch. Dist. No. 361,* 310 N.W.2d 482, 484 (Minn.1981). The inquiry into the parties' intent is a question of law, reviewable de novo. *Johnson v. Piper Jaffray, Inc.,* 530 N.W.2d 790, 795 (Minn. 1995). Doubts about whether the parties intended to arbitrate a dispute are resolved in favor of arbitration, "whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983)).

The provision of the management agreement that makes the agreement "binding on the parties and their respective ... assigns" makes no exception for the agreement's arbitration clause. Further, a "valid assignment generally operates to vest in the assignee the same right, title, or interest that the assignor had in the thing assigned." *State ex rel. Southwell v. Chamberland,* 361 N.W.2d

814, 818 (Minn.1985); *see also Ill. Farmers Ins. Co. v. Glass Serv. Co., Inc.*, 669 N.W.2d 420 (Minn.App.2003) (holding that assignee of an insured is subject to mandatory arbitration provisions of Minnesota's No–Fault Act). Here, the plain language of the management agreement provides that Lennon may demand arbitration of disputes concerning his rights under the management agreement, which includes his right to receive compensation. By virtue of receiving a valid assignment of Lennon's right to receive compensation, Lexington–Silverwood also received the right to demand arbitration of disputes concerning payment of this compensation. We conclude, therefore, that Lexington–Silverwood may compel arbitration to enforce its assignment.

## DECISION

The district court erred by concluding that the assignment to appellant was invalid and that appellant was not entitled to compel arbitration.

**Reversed and remanded.**